# CHARLES T. GRANGER v. LAWRENCE L. CRAVEN.[1]

May 9, 1924.

No. 23,895.

**Covenant by assistant not to compete with employer, in case former leaves, reasonable.**

1. It is but a reasonable protection of a legitimate interest for a professional man, about to employ another in such manner as to give him access to the acquaintance and confidence of patients, to require of the employe a covenant not to enter into competition with the employer for a reasonable time after the relationship is terminated.

**Such covenant may be enforced by injunction.**

2. Where, in such a case, the assistant covenants, in the event of the termination of the employment, not to open an office in the same city (containing not over 20,000 population), nor within 20 miles thereof, for a period of 3 years, the protection afforded the employer's good will is reasonable and the covenant may be enforced by injunction.

**When irreparable damage will be presumed from breach of covenant.**

3. Where a professional man is employed to take over an entire department of the employer's practice, it is so clear that he will acquire the confidence and adherence of many of the patients that irreparable damage to the employer will be presumed to arise from the employe's breach of his covenant not to establish a competing practice for a period of 3 years after the termination of the employment.

**Relief granted notwithstanding right of either party to terminate contract.**

4. Relief in such a case will not be denied because the employer had the right to terminate the contract at any time upon 30 days' notice, the employe having the same right and the contract having been performed and the employment under it continuing for over two years.

Action in the district court for Olmsted county to restrain defendant during the pendency of the action and permanently from

[1]Reported in 199 N. W. 10.

engaging in the practice of medicine and surgery in the city of Rochester and within 20 miles thereof for a term of three years. From an order, Callaghan, J., granting a temporary injunction, defendant appealed. Affirmed.

*Oscar C. Ronken* and *A. J. Rockne*, for appellant.

*Granger & Clemens*, for respondent.

STONE, J.

Defendant appeals from an order granting a temporary injunction restraining him "from engaging in the practice of medicine and surgery, or any of the branches thereof, either directly or indirectly * * * in the city of Rochester, Minnesota, or within twenty miles thereof."

Both plaintiff and defendant are physicians and surgeons. For nearly 30 years, plaintiff has been engaged in the practice of his profession in Rochester, a city of not over 20,000 population. There and in the adjacent territory he has an extensive practice. For some time it has been his custom to employ other physicians and surgeons as his assistants.

On August 29, 1921, defendant entered his employ under a written contract whereby he was to take charge of the ear, nose and throat department in plaintiff's office; perform all services that might be required therein, and devote his entire time and attention thereto; plaintiff to provide office room, instruments and other equipment. In consideration of the performance of the contract by defendant, plaintiff agreed to pay him, as collected, 50 per cent of the receipts from that department. The contract was subject to termination by either party on 30 days' written notice. It further stipulates, and out of this provision this suit arises, that defendant, after the termination of the contract, would not engage in the practice of medicine or surgery, or any of the branches thereof, directly or indirectly, or as an employe of any one else in Rochester, nor within 20 miles thereof, for 3 years after such termination.

The complaint charges that defendant entered upon the performance of the contract and treated many of plaintiff's patients; made many outside calls, not only within his specialty but for patients

suffering from other ailments, and continued in that work continuously until October 1, 1923, having treated more than 3,000 patients during that period. On September 26, 1923, plaintiff served notice of the termination of the contract. On Octotber 2, following, defendant left plaintiff's employ and immediately opened an office in Rochester for the practice of medicine and surgery, and, it is alleged, "caused advertisements thereof to be inserted in the daily papers" of the city of Rochester, and, again quoting from the complaint, "has been and still continues to be engaged in the practice of medicine and surgery thereat."

There being no denial of these averments, the learned trial judge ordered a temporary injunction. The appeal from the order seems to present the whole case on its merits. Counsel for appellant take position squarely upon the argument that, notwithstanding the contract, "plaintiff is not entitled to be protected against competition by defendant," and that all that he should have is protection "against the misuse by defendant of some advantage obtained by him while in" plaintiff's employ.

Thus there is presented this single question: May a physician and surgeon, having a long-established practice, condition his employment of an assistant by requiring the latter, in the event of a termination of the employment, to refrain for a reasonable period from entering into competition with him? The case for appellant is put thus:

"Plaintiff is entitled, however, to be protected against any misuse by defendant of his former employment to the detriment of plaintiff's practice. He is entitled to be protected against the enticing away of his patients, if any enticing there be and it is done by means of the advantage obtained because of the former employment. But if no unfair advantage is taken or used by defendant because of his former employment, then he is entitled to pursue his calling unmolested and plaintiff is entitled to no relief therefrom. To give such relief to plaintiff would not be protecting him in what is rightfully his, but would be giving him an advantage which he did not formerly possess."

We cannot take that view of this case. We cannot agree that public policy so limited plaintiff's right to say on what conditions he would admit defendant to his employment. We decline to adopt a rule so abridging the right of contract, which is no small part of the liberty of the citizen. We do not so far forget that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. James Quirk Milling Co. v. Minneapolis & St. L. R. Co. 98 Minn. 22, 107 N. W. 742, following Baltimore & O. S. W. Ry. Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. ed. 360.

We consider that public policy requires the enforcement of this contract as the parties wrote it rather than judicial permission for another surgeon to practice in Rochester. Public policy cannot be said very emphatically to demand the latter result.

Courts scrutinize carefully all contracts limiting a man's natural right to follow any trade or profession anywhere he pleases and in any lawful manner. But it is just as important to protect the enjoyment of an establishment in trade or profession, which its possessor has built up by his own honest application to every day duty and the faithful performance of the tasks which every day imposes upon the ordinary man.

What one creates by his own labor is his. Public policy does not intend that another than the producer shall reap the fruits of labor. Rather it gives to him who labors the right by every legitimate means to protect the fruits of his labor and secure the enjoyment of them to himself. "Freedom to contract must not be unreasonably abridged. Neither must the right to protect by reasonable restrictions that which a man by industry, skill, and good judgment has built up, be denied." Eureka Laundry Co. v. Long, 146 Wis. 205, 131 N. W. 412, 35 L. R. A. (N. S.) 119.

In this case we must assume that, when the contract was made, plaintiff had a very substantial practice and the good will of many patients; that, in Rochester and vicinity, he enjoyed a professional establishment of a profitable nature—the result of nearly 30 years

of professional effort. It was an establishment, the maintenance of which was dependent entirely on the continued good will of patients and their consequent adherence to plaintiff.

It is obvious, therefore, that, when he employed defendant as an assistant, plaintiff had a legitimate interest to protect. The presence of such an interest is the first thing to look for when such a contract as this is challenged. Its presence is necessary to uphold the agreement and make it enforceable in equity or at law. Kronschnabel-Smith Co. v. Kronschnabel, 87 Minn. 230, 91 N. W. 892; Williams v. Thomson, 143 Minn. 454, 174 N. W. 307; Mandeville v. Harman, 42 N. J. Eq. 185, 7 Atl. 37.

The only other inquiry is whether, plaintiff having a legitimate interest to protect, the protection given is itself legitimate, i. e., reasonable. There should be no question there. As to time, a limit of 3 years is clearly reasonable. As to area, the considerations arising from the speed and convenience of modern facilities of communication and transportation put equally beyond question the exclusion of defendant from Rochester and the territory within a radius of 20 miles.

The test is one of reasonableness. Such a contract is not unlawful if the restriction is no more than necessary to afford fair protection to the covenantee and is not injurious to the interests of the public. The restraint put on defendant by his contract meets the test of reasonableness at all points. It protects a legitimate interest in a legitimate manner.

Such an employe as was defendant gets an acquaintance and standing with his employer's patients from which, even though he is just an average man, he is bound to reap substantial benefit the moment he leaves his employer's office and opens his own in the same vicinity. Many of the old patients will have come to like and trust him. They will follow him, even though he goes so far in the exercise of good faith as to urge them all to remain with his former employer.

How futile it is then to argue that all the protection for which the employer can contract is an inhibition, not of competition, but only of "unfair competition" by the use of the special knowledge of

the employer's business gained in his employ, and the soliciting of his patients away from him. Assuming for the moment that active solicitation would enter largely into such a case, a writ of injunction would be a vain thing wherewith to attempt its prevention. But the trouble is, in the professions, that, without solicitation and with even meticulous good faith on the part of the employe, the good will and establishment of the employer will be substantially impaired the moment the employe, who has served faithfully and well, begins competition with him. Therefore, it is only reasonable protection of a legitimate interest for a professional man, about to employ another on such terms as to give the latter access to the acquaintance and confidence of his clients, to require of the employe a covenant not to enter into competition with the employer for a reasonable time after the relationship is terminated.

So far as possible invasions of a plaintiff's good will are concerned, there is no distinction between a contract such as we have here and a partnership. As a partner, Dr. Craven would have had no more opportunity for the acquisition of some of Dr. Granger's good will than he had as an assistant. And, on the dissolution of the partnership, the partner continuing business may exact from the retiring partners appropriate covenants not to re-engage in a competing business.

Nor is the case different in principle from one arising from the sale of a business. If defendant had bought out the plaintiff, he certainly would have exacted a covenant preventing plaintiff from re-entering practice in competition with him. That is, he would have protected his newly purchased good will from invasion by its former possessor. That sort of a covenant, otherwise reasonable, has never been successfully challenged. There was just as much and the same kind of reason for the covenant here required of defendant. A substantial part, a whole department, of plaintiff's practice was put in his charge. Plaintiff had a right to resume it however, and so to condition the contract that, so far as possible, he could resume it intact, and repossess himself of its full benefit.

It would be most uncomplimentary to defendant to suppose that he would not, were he to open an office in Rochester, attract to

himself at once and automatically, a substantial number of plaintiff's patients. That would be true particularly of those desiring treatment for ear, nose or throat. That consideration shows both the propriety of the restrictive covenant, and the sureness with which irreparable injury to plaintiff will follow unless defendant is restrained by injunction from a breach of that covenant. We need no evidence to show that substantial injury would follow otherwise, and it would be the kind of injury for which the legal remedy is inadequate.

There is so much authority on this subject that any attempt here to review it is prohibited by propriety. The task has been admirably performed in the annotations appearing in 9 A. L. R. 1456 and 20 A. L. R. 861. The latter supplements and brings down to date (1922) the former.

The last case so annotated (The Menter Co. v. Brock, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857), is confidently relied upon by appellant. However, a very casual examination shows its difference from this case, not only in its facts but also in the principles invoked for its decision. There, the defendant covenantor was a clothing salesman who had entered the employ of the plaintiff covenantee as the manager of a "chain" clothing store in Minneapolis. The restrictive covenant imposed was that after the termination of his employment the defendant would not in Minneapolis engage in the same business as plaintiff. The denial of an injunction was affirmed upon the ground that the plaintiff failed to show actual or potential irreparable damage from defendant's violation of the covenant. In other words, while it was clear that the plaintiff, in the good will of its business, had a legitimate interest to protect, it was equally clear that such interest needed no protection from the defendant. In consequence his covenant not to enter the clothing business in Minneapolis was considered unreasonable.

After stating the rule that where an employe's name may carry with it the good will of the employer's business or where the employe has obtained knowledge of the secrets of such business, injunctive relief may be granted, Mr. Justice Holt went on to say that the Menter Company's case, tested by that rule, failed because

there was no evidence that Brock had come "in contact with the customers of plaintiff so as to obtain any personal hold upon the good will of the business, or that he had made or threatened to make any effort to secure or attract plaintiff's patrons." How different is this case for, as already explained, defendant had for 2 years come in intimate contact with large numbers of defendant's patients. It must be presumed that he acquired a close "personal hold" upon many of them and in consequence a substantial portion of plaintiff's good will. It is equally clear that the only effort he need make to "secure or attract plaintiff's patrons" in considerable number is to open an office in Rochester.

Again, the situation in The Menter Co. v. Brock was expressly distinguished from those "where a person is hired to work up a route or territory and serve the customers obtained therein, as, for instance, a milk or laundry route and the like. There the employe comes directly in contact with the customers. They may be attracted to him personally, and are likely to go with him should he enter the service of a competitor." After citing leading cases to that effect, the opinion explains that in such cases the injunction is rested upon the wrongful interference with the employer's business, such interference readily appearing "when the former employe invades the route on behalf of a new employer."

Certainly a competent surgeon, particularly a specialist, may be presumed to acquire as firm a hold upon patients as the driver of a laundry wagon upon customers. The fact that the good will of patients or customers belongs to the employer, entitles him to require an employe within reasonable limits, so to conduct himself after the termination of the employment as not to make improper use of the opportunity his employment has given him to acquire that good will.

It is not to be overlooked that different conditions attend professional employment rfom those which go with the more conventional relation of master and servant. Public policy is much more concerned with the case of "one who has nothing but his labor to sell and is in urgent need of selling that" and who in consequence does not object much or long to the terms of any contract of em-

ployment offered him than with the case of a professional man who is the product of modern university education and has in his training an asset which should make him independent of the dictation of others.

The needs and circumstances of the parties will be looked into in every case and each "must be judged according to its own facts and circumstances." National Benefit Co. v. Union Hospital Co. 45 Minn. 272, 47 N. W. 806, 11 L. R. A. 437. No contract should be enforced which seeks, not to protect the covenantee, but to repress the covenantor. If the covenantee has no legitimate interest to protect, or, having one, has sought to give it an unreasonable protection, one of a kind or degree not warranted by the circumstances, and particularly by the covenantor's power to do him harm, equity should not interfere. The Menter Co. v. Brock, supra, was such a case. But, given a legitimate interest protected to a reasonable degree, where damage beyond the power of law to prevent or make good is reasonably sure to follow a breach of the protecting covenant, its breach should be prevented by injunction. This is such a case.

The cases in which such covenants conditioning professional employment have been upheld are listed in the annotations above referred to at 9 A. L. R. 1472 and 20 A. L. R. 866.

A secondary objection to the enforcement of the contract here in question is the claim that it is so inequitable that equity should not aid its enforcement. The main thing urged is that plaintiff had the right to terminate the contract on 30 days' notice. It is a fairly complete answer to say that defendant had the same right. In this there was complete mutuality of privilege and right. But the controlling consideration against the argument of inequity, and alleged lack of consideration, is that, for over 2 years, defendant was employed by plaintiff under the contract. Each of them seems to have performed to the satisfaction of the other, at least, until notice of termination was served.

If plaintiff had taken undue advantage of his right to terminate the contract, it might very well be that he would have been refused an injunction to prevent defendant's breach of the covenant here

considered. But after performance of the contract for 2 years, under such circumstances as we have here, it is too late to urge want of equity in plaintiff's case merely because he had a power of arbitrary termination which he did not abuse.

Order affirmed.