ARTHUR W. SHALEEN v. JOSEPH J. STRATTE.[1]

February 10, 1933.

No. 29,393.

*John Matt Brendal, William L. Peterson,* and *W. E. Rowe,* for appellant.

*A. D. Bornemann,* for respondent.

[1]Reported in 246 N. W. 744.

HILTON, JUSTICE.

Appeal from an order sustaining a demurrer interposed to the answer.

This action was brought to restrain defendant from continuing in the practice of his profession as a physician and surgeon in the counties of Kittson and Marshall and was based upon a provision in the amended partnership agreement entered into between the plaintiff and defendant. An order to show cause was issued, and at a hearing on plaintiff's verified complaint and defendant's affidavit a temporary injunction was issued wherein, upon plaintiff's giving the required bond, defendant was commanded to refrain from engaging directly or indirectly in any way in the practice of his profession, with some specified exceptions, within the counties of Kittson and Marshall, until the final judgment.

The original partnership agreement, made November 7, 1925, was in the main in the usual form. The partners were Arthur W. Shaleen, Joseph J. Stratte, and Harold C. Stratte. The name of the partnership was Shaleen, Stratte & Stratte, also known as the Kittson Clinic. Provision was made therein for a division of the profits on a percentage basis. Article IX of the agreement read:

"In the event that Dr. Harold C. Stratte should withdraw from the firm the conditions of this agreement shall continue to be binding on the remaining partners, with the exception that in that event the division of profits shall be fifty-five per cent (55%) to Joseph J. Stratte and forty-five per cent (45%) to Arthur W. Shaleen."

In 1927 Harold C. Stratte withdrew from the partnership, and an agreement and amendment (by a written memorandum) was made and entered into between plaintiff and defendant, by which article IX was amended. The only change made in the wording of the article was one adding five per cent to Stratte's portion of the profits and deducting five per cent from that of Shaleen. The amendment also provided:

"Both parties to this memorandum mutually agree to continue their partnership as the Kittson Clinic according to the present articles of co-partnership."

Article XII of the agreement was as follows:

"Any partner may withdraw from the firm at any time upon giving ninety days' written and personal notice to the other members of the firm of such withdrawal. In the case of such withdrawal the partners shall make equitable settlement for the value of the interest in the property of the firm belonging to the retiring partner. In the event of the withdrawal from the partnership or in the event of the withdrawal from, or the dissolution of the partnership, Joseph J. Stratte covenants and agrees with Arthur W. Shaleen that he, the said Joseph J. Stratte, shall not for the period of five years from the date of his withdrawal from this partnership, or the dissolution thereof, carry on or be engaged, either directly or indirectly, and either as principal or agent, in the said profession of physician and surgeon within the counties of Kittson and Marshall, State of Minnesota, and shall not at any time thereafter interfere with or endeavor to divert any of the business carried on by the continuing partners and any of the business carried on by Arthur W. Shaleen. In the event of any breach of the restrictions in this clause contained by said Joseph J. Stratte, he shall pay to the continuing partners in the event of his withdrawal the sum of fifteen dollars ($15) per day for the entire time during which the agreement is violated as liquidated damages, and in the event of the dissolution of the firm he shall pay to Arthur W. Shaleen the sum of fifteen dollars ($15) per day for the entire time during which the agreement is violated as liquidated damages."

On April 28, 1932, Joseph J. Stratte gave the required 90 days' notice of the termination of the partnership. However, after that termination he continued to practice his profession in Kittson and Marshall counties, and this action was instituted.

At the hearing on the application for a temporary injunction some consideration was given to the suggestion of defendant that the last portion of article XII provided the only remedy available to plaintiff for a breach by defendant of his covenant not to continue the practice of his profession in the prohibited territory. The court then expressed its views thereon by saying:

"However, it occurs to me that the principal thing these men had in mind when the agreement was made was that Doctor Stratte would not engage in the professional business of a physician and surgeon within the prohibited area if certain things happened. If plaintiff is to rely only upon his legal remedies it follows that defendant may, with impunity, continue to practice in violation of his agreement by simply paying to plaintiff the stipulated sum, perhaps compelling plaintiff to sue from day to day or from time to time as the delinquency continues. Courts should be, and I think are, anxious to enforce contracts rather than seek loopholes or avenues of escape for those who violate them."

The conclusion reached was correct. In Granger v. Craven, 159 Minn. 296, 299, 199 N. W. 10, 11, 52 A. L. R. 1356, it is stated:

"The usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare."

The foregoing is perhaps not of importance in view of the limitation later placed on the issue to be determined.

Defendant served an answer, to which a demurrer was interposed. A hearing was had thereon. In the order sustaining the demurrer the court stated:

"They [attorneys for the respective parties] also agreed that the only question to be determined by the court upon demurrer relates to the restrictive covenant contained in paragraph twelve (12) of the articles of copartnership referred to in the complaint. Every other issue in the case, for the purpose of determining this particular question, has by agreement of counsel been eliminated from the consideration. Hence the present inquiry will be directed only to that particular phase.

"Defendant in his answer adequately sets forth the position by him taken. It reads as follows: '* * * In any event, the provisions of said articles of copartnership wherein and whereby it was

sought to prevent and exclude this defendant from engaging in the practice of his profession within the boundaries of Kittson and Marshall counties in case of his withdrawal from the said firm or in case of its dissolution were and are contrary to public policy, in restraint of trade, without consideration, unreciprocal, wanting in mutuality, null and void.'

"Thus limiting the issue, the only thing to be determined is whether or not, as a matter of law, the restrictive covenant can be enforced in an action wherein injunctive relief is sought."

The court expressed the opinion that the demurrer should be sustained, and an order was so entered.

The record discloses that for 29 years plaintiff had been engaged in a large and lucrative practice of his profession in the counties involved, having his offices in the village of Hallock; that it became desirable for him to have assistance in the handling of that practice; that in 1922 he secured defendant, who then lived in another part of the state, for that purpose, under an arrangement the particulars of which do not appear. In 1925 the partnership composed of plaintiff and the two Strattes was formed. The complaint contains numerous charges of dereliction on the part of defendant violative of the partnership agreement, in addition to the defendant's violation of article XII, which are not here necessary to recite.

Considering the issue raised by the answer and the stipulation of the parties, we think the demurrer was properly sustained. The purpose of the partnership arrangement is too clear· to warrant comment. Plaintiff had a vital interest to protect. Such restrictive agreements, when reasonable, have consistently been sustained in this state; they are not unlawful. Granger v. Craven, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356; Andrews v. Cosgriff, 175 Minn. 431, 221 N. W. 642. It is not necessary to refer to numerous cases cited from other jurisdictions. In each of the two cases above cited, although the restricted area was somewhat smaller in extent than the area here, there was a much larger population and more cities and villages. In each case the restriction was held to be lawful. The restriction here was a lawful one.

224

Full consideration has been given to all the propositions advanced by defendant.

Affirmed.

OLSEN, JUSTICE, took no part.