E. CARLTON FOSTER and JOHN A. HATCH, Appellants, v. GEORGE H. R. WHITE, Respondent.

Fourth Department, October 9, 1936.

*Homer C. Pelton* [*Halsey Sayles* of counsel], for the appellants.

*John E. Sheridan* [*W. Smith O'Brien* of counsel], for the respondent.

THOMPSON, J. The plaintiffs are practicing physicians and copartners. They conduct a medical center and clinic in the village of Penn Yan, and contiguous territory, in the county of Yates, New York, under the name of the Foster-Hatch Medical Group. This is their suit in equity against defendant, also a practicing physician, for a perpetual injunction, in accordance with the provisions of a written contract, under which he was employed by them. The contract provides that defendant would not engage in or practice his profession as a physician or surgeon at any time in the county of Yates, except while in the employment or associated with the Foster-Hatch Medical Group, without the consent in writing of plaintiffs; and in case of violation of the covenant by him, he should pay plaintiffs the sum of $10,000 liquidated damages; not a penalty.

Here is an appeal from a judgment entered pursuant to an order dismissing the complaint on the ground that it does not state facts sufficient to constitute a cause of action; the agreement being void as against public policy, its enforcement unreasonable, harsh and oppressive, defendant's services not being unique or extraordinary, no trade or professional secrets having been divulged by him, and the " restrictive covenant [being] more extensive than protection to the plaintiffs reasonably required."

It appears in the complaint that plaintiffs have spent large sums of money in setting up the medical center and clinic which they are endeavoring to maintain. For that purpose they have purchased a building and have caused it to be remodeled and equipped at great expense, and they have established and maintain offices for the general practice of medicine at various locations in Yates county, under the same auspices, for the purpose of rendering medical service in accordance with the plan of the medical group.

Defendant entered the employ of plaintiffs in December, 1932, and continued his service to them under the contract, receiving various sums of money as wages and bonus, until August 24, 1935, when he quit. Since then he has continued to practice in Yates county, without the consent in writing of plaintiffs. He did not live or practice there before his employment by plaintiffs. It is the contention of plaintiffs that the conduct of defendant in

setting up a competing business in Yates county violates the contract, is in injury of their property rights, and destructive of the value of their good will.

The Special Term bases its decision on our holding in *Corpin* v. *Wheatley* (227 App. Div. 212), which it regards as controlling. We do not so regard it. There the person enjoined was a beauty parlor operative, and the covenant was that she would not enter the employ or service of any person engaged in the same business during the term of the contract and for one year after its conclusion. There was no covenant that the defendant should not set up business for herself, nor was there fact or claim indicating that the parties considered that there was likelihood of her doing so; thus the questions of injury or protection to plaintiff's property or good will were not present in the case. In reversing the judgment, which, it should be observed, was rendered after a trial, and not, as here, on a motion to dismiss the complaint before trial, we made use of the following significant words: " Each case of this character must stand upon its own particular facts. Considering the nature of defendant's services, the specified absence of findings and the general state of the proof, we are led to the conclusion that the prohibiting provisions of this contract are unenforcible." A very different situation is found here. The contract carefully provides against a contingency that has in fact arisen. A competing business has been established and damage has already been done to the property and good will of the employers. The cases are unlike on their facts, the character of the services and the respective persons rendering them, and the damage suffered. Moreover, a trial not having taken place, we cannot be sure what the " particular facts " are upon which this case must eventually stand.

" ' In all cases such as this, one has to ask oneself what are the interests of the employer that are to be protected, and against what is he entitled to have them protected. * * * He is * * * entitled not to have his old customers by solicitation or such other means enticed away from him. * * * ' Each case must depend upon its own facts and circumstances. Any unfair competition or practice may move equity to enforce a negative covenant." (CRANE, J., in *Clark Paper & Mfg. Co.* v. *Stenacher*, 236 N. Y. 312, 320, 321.)

It is fundamental that the test to be applied in cases of this sort is, *first*, is the injunction proposed necessary and reasonable for the protection of the plaintiffs' property and good will, and *second*, is it unreasonable, unjust or oppressive to defendant?

In the ordinary employment case equity will not restrain a breach of a covenant for personal services unless the services are of peculiar merit or character. This principle is without

application in a suit to restrain an employee from violating an agreement not to engage in the same line of business, either for himself or in behalf of, or in conjunction with, others, after his employment under the contract containing such restrictive covenant has been terminated. (*National Linen Serv. Corp.* v. *Clower,* 179 Ga. 136; 175 S. E. 460; *Dyar Sales & Machinery Co.* v. *Bleiler,* 106 Vt. 425; 175 Atl. 27; *Capital Laundry Co.* v. *Vannozzi,* 115 N. J. Eq. 26; 169 Atl. 554.) In the one case it is the damage suffered by the loss of the services of the exceptionally skilled employee; in the other it is the damage to the employer's business by the setting up of a competitive business by a former employee.

Agreements imposing restraints upon the right of an employee to engage in competitive service after the termination of the contract of service are analogous to, and governed by, the same general rules applicable to restrictive covenants in the sales of business and good will. (*McCall Co.* v. *Wright,* 198 N. Y. 143, 150; *Eureka Laundry Co.* v. *Long,* 146 Wis. 205; 35 L. R. A. [N. S.] 119; 131 N. W. 412; *Fink & Sons, Inc.,* v. *Goldberg,* 101 N. J. Eq. 644; 139 A. 408; *Deuerling* v. *City Baking Co.,* 155 Md. 280; 67 A. L. R. 993, 994, and note; 141 A. 542; 13 C. J. 485.) The dictates of fair dealing, and the requirements of good faith, will at once engage equity whatever may be the relationship of the parties or the nature of the transaction, where fraud or dishonesty threaten unlawful or irreparable injury to the property of a suitor.

It is manifest that the physician employed as an assistant to another must in the course of his duties become acquainted with the clientele of his employer and acquire their confidence and good will. It is clear that this precise situation was contemplated by the parties to this contract, and that it was drawn to provide against the business and good will of the plaintiffs being lost to them in case of the severance of the employment, and defendant's locating in Yates county. Defendant's establishing himself in Yates county for the practice of medicine was a deliberate choice on his part to disregard and violate his solemn bond not to compete with his former employers. In such circumstances courts of equity will extend the arm of injunction where the interests of justice require such a drastic remedy for the protection of a physician's business, practice and good will.

In *Palmer* v. *Mallet* (L. R. 36 Ch. Div. 411) an assistant to a partnership, consisting of two surgeons, was hired, upon the condition incorporated in a bond, that he should not at any time " set up or carry on " the business or profession of surgery in a certain town or within ten miles thereof, and that he should not " at any time hereafter directly or indirectly, and either alone or in partnership with or as assistant of any other person or per-

sons, * * * carry on the profession or business of a surgeon " in the aforementioned town or within ten miles thereof. Upon the dissolution of the partnership, after which both parties continued to practice in the town, and one of the partners engaged the obligor in the bond as his assistant, the other partner was given an injunction to restrain the obligor from serving under the contract subsequent to the dissolution of the partnership.

Injunctions permanently to refrain from the practice of a profession in defined localities have been sustained in many cases. (See *Webster* v. *Williams*, 62 Ark. 101; 34 S. W. 537; *Storer* v. *Brock*, 351 Ill. 643; 184 N. E. 868, affg. 267 Ill. App. 138; *Ryan* v. *Hamilton*, 205 Ill. 191; 68 N. E. 781; *Linn* v. *Sigsbee*, 67 Ill. 75; *Cole* v. *Edwards*, 93 Iowa, 477; 61 N. W. 940; *Haldeman* v. *Simonton*, 55 Iowa, 144; 7 N. W. 493; *Mills* v. *Cleveland*, 87 Kan. 549; 125 P. 58; *Hill* v. *Gudgell*, 9 Ky. L. Rep. 436; *Warfield* v. *Booth*, 33 Md. 63; *Shaleen* v. *Stratte*, 188 Minn. 219; 246 N. W. 744; *Andrews* v. *Cosgriff*, 175 Minn. 431; 221 N. W. 642.)

The fact that the covenant is unlimited as to time will not preclude the granting of an injunction, where the area of the restraint is limited and reasonable.

" The covenant in the present case is partial and not general. It is practically unlimited as to time, but this, under the authorities, is not an objection, if the contract is otherwise good. (*Ward* v. *Byrne*, 5 M. & W. 548; *Mumford* v. *Gething*, 7 C. B. [N. S.] 305, 317.) " (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 473, 484, 485.)

In *Fitch* v. *Dewes* (L. R. [1921] 2 A. C. 158) a solicitor's clerk's covenant not to engage in the same profession within seven miles of the town hall in the place of employment, was held valid, and a breach enjoined; the court holding that a covenant although unlimited as to time, will nevertheless be held valid where it was reasonably limited as to space. " Where there is a good will to be protected a covenant in restraint of trade, even where imposed as a condition of employment, may be so framed as to give adequate protection not only to the covenantee himself but also to his successors in the business, and this although it may be necessary for that purpose to impose a restriction upon the covenantor for the remainder of his life. * * * It is impossible to say that there must in every case be some specified limit of time defined by a figure. Nor can we say that the contract ought to be confined to the life of the covenantee, for he might die in the next year or so and the good will might then be lost to his successors. It was no doubt thought necessary to continue the protection throughout the period during which the covenantee and his successors in interest might carry on the practice, and for that purpose to bind the appellant (so far as the limited area was concerned) for the remainder of his

life. I cannot think that in the circumstances of this case the restriction imposed was unreasonable from any point of view."

According to the weight of authority as applied to contracts by physicians, surgeons and others of kindred profession, relief for violation of these contracts will not be denied merely because the agreement is unlimited as to time, where as to area the restraint is limited and reasonable. For, generally, where the restraint is unlimited as to time, the contract is not thereby rendered unconscionable or oppressive, for equity will refuse to enforce it if the breach does not result in material injury to the promisee. Hence, such agreement may be said to extend only for such period of time as is necessary to protect the promisee from material injury. (*Mallan* v. *May*, 11 M. & W. 653; 152 Eng. Reprint, 967; 6 Eng. Rul. Cas. 383.)

"We do not think the covenant is invalid if no time is therein specified during which the defendant is not to re-engage in the practice of his profession in the limits of the city and county designated." (*Gordon* v. *Mansfield*, 84 Mo. App. 367, 377.)

Sustaining an injunction without time limit gave rise to the following statement in *French* v. *Parker* (16 R. I. 219, 220, 221; 14 A. 870, 871): "A trader has an interest in his trade beyond his own exercise of it, namely, the goodwill, which may be sold, bequeathed, or become assets, and which it is therefore not unreasonable for him to have protected by a continuance of the restraint beyond his own life. * * * The goodwill of the trade might be sold during the life of the trader, and would sell for more, if protected from competition during the life of the party restrained, than it would if it were protected only during the life of the trader. This reason is as valid in the case of a profession as of a trade, for whether, technically speaking, there be any goodwill attending a profession or not, the professional practice itself would probably sell for more with the restraining contract, if the restraint were unlimited in duration, than it would if the restraint were for the life of the promisee or covenantee only. If the complainant here wished to retire from his practice and sell it, he could probably sell it for more, if he could secure the purchaser from competition with the defendant forever, than he could if he could only secure him from such competition during his own life. So, if he wished to take in a partner, he could for the same reason make better terms with him."

To the same effect see *Foss* v. *Roby* (195 Mass. 292; 10 L. R. A. [N. S.] 1200; 81 N. E. 199); *Madson* v. *Johnson* (164 Wis. 612; 160 N. W. 1085). In *Beatty* v. *Coble* (142 Ind. 329; 41 N. E. 590) the court held that the plain meaning and import of an agreement to "retire from the practice of medicine and surgery at Spencer,

Indiana," was that the promisor agreed not to engage in the practice in that field, without limitation as to time, and that the want of such definite limit was no objection to such a contract.

On a motion like this we cannot condemn the contract upon the ground that equity should not or might not lay the injunction for the whole of the time open to it by the terms of the contract. That question should not be determined now. Here we have only the complaint. The facts and circumstances of the case and the events of the trial are uncertain and unknown. They must be consulted in the making up of the judgment which equity may see fit to render as of the day that it is moved to do so. (See *Mallan v. May, supra.*)

We find the contract to be clear and the obligations it imposes to be mutual. In our view, the facts and the relationship of the parties, all being physicians, present a situation appropriate for the granting of equitable relief to enforce its provisions.

We are of opinion that the stipulation in the contract for liquidated damages does not oust a court of equity from jurisdiction to entertain an application for injunctive relief in the circumstances. (*Diamond Match Co.* v. *Roeber, supra,* 486; *Wirth & Hamid Fair Booking, Inc.,* v. *Wirth,* 265 N. Y. 214.) The covenant was essential for the protection of the plaintiffs under well-recognized rules of law, and it was entirely proper for them to require defendant to agree to it. Defendant voluntarily assented to it, and knowingly and persistently violated, and continued to violate it. No reason is presented why he should not have fairly and honestly lived up to it; the trial will develop whether or not there be such.

The judgment and order should be reversed, and the motion denied, with costs.

All concur, SEARS, P. J., in result on the ground that the nature of the employment of the defendant by the plaintiff, namely, to practice his profession as a physician, distinguishes this case from that of an ordinary employee of a mercantile establishment, except CROSBY, J., who dissents and votes for affirmance. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law, with costs, and motion denied, with ten dollars costs.