Robert E. HEDBERG, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm Life Insurance Company, State Farm Fire & Casualty Company, State Farm General Insurance Company, Appellees.

No. 17797.

United States Court of Appeals Eighth Circuit.

Aug. 30, 1965.

Joe A. Walters and Robert J. Christianson, Jr., both of O'Connor, Green, Thomas & Walters, Minneapolis, Minn., for appellant.

Marvin E. Lundquist, Wheaton, Minn., for appellee.

Before VAN OOSTERHOUT, BLACKMUN, and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

State Farm Mutual Automobile Insurance Company (State Automobile), State Farm Life Insurance Company (State

Life), State Farm Fire & Casualty Company (State Fire), and State Farm General Insurance Company (State General), all Illinois corporations, instituted this diversity suit in the United States District Court for the District of Minnesota against Robert E. Hedberg, a Minnesota resident. The relief sought was (a) replevin of personal property; (b) damages for the detention of that property; (c) an injunction; and (d) damages for violation of contracts between the plaintiffs and the defendant. Hedberg's answer challenged the presence of the $10,000 jurisdictional amount prescribed by 28 U.S.C. § 1332(a) and, as well, the plaintiffs' right to the relief requested.

At the argument on the plaintiffs' motion for a preliminary injunction Hedberg again raised the jurisdictional issue. The trial court (Judge Nordbye) did not mention this in any written order but obviously decided the issue in favor of the plaintiffs. The court did file a memorandum holding that the plaintiffs were entitled to injunctive relief for a period of one year from March 2, 1964. 236 F.Supp. 797. The injunction was issued on July 10, 1964. Hedberg takes his appeal under 28 U.S.C. § 1292(a) (1).

There is no dispute about the facts as they appear for present purposes. Hedberg for some years was one of several local agents in the Twin Cities area for the respective plaintiffs. This relationship was formalized by written contract consisting of Hedberg's appointment by the insurance company and his acceptance. This contract provided, among other things, that (a) Hedberg "will not represent any other insurer in any capacity without the written consent" of the State Farm insurer, "or engage in any practice competitive with or prejudicial to the best interests of the" State Farm insurer; (b) records and materials furnished to Hedberg by the insurer shall

remain the property of the insurer and upon termination shall be delivered to it; (c) also upon termination, Section I G, Hedberg "shall thereafter refrain from further solicitation for or servicing of policyholders of the [insurer] and from interfering in any way for a period of one year with existing policies and policyholders"; and (d) the agreement "may be terminated * * * with or without cause, by either party * * * giving written notice to the other and shall be deemed terminated as of the date specified in such notice". Subject to stated conditions, Section IV B 4,[1] which, concededly, were not fulfilled by Hedberg, termination other than by death was to be accompanied by payment to the agent of a percentage of local agency annual earnings.

Actually the contracts took the form of one collective instrument, together with an acceptance, between Hedberg and State Automobile, State Life, and State Fire, and a separate one between Hedberg and State General. The former, however, was phrased in terms of "each Company" and recited that "each appoints" Hedberg as "its Local Agent".

Hedberg's agency for each of the four companies was terminated March 2, 1964, and he thereupon ceased to be a representative of any of them. The trial court found, and stated as its reasons for the preliminary injunction, as required by Rule 65(d), F.R.Civ.P.,

"Until March 2, 1964, when he was discharged by the plaintiffs, defendant represented the State Farm Companies under a written 'Local Agent's Appointment.' Since March 2, 1964, he has been actively engaged in representing an insurance company which is one of plaintiffs' competitors, and has carried on a studied campaign to obtain for his present insurance company the insurance

---

1. " * * * provided all records and files used by the Agent in his representation of the Company and all unused materials and supplies furnished to him by the Company have been surrendered to the Company or its authorized representative

and provided the Agent has agreed in writing not to service policyholders of the Company or to compete with the Company or interfere with its business for one full year from the date of termination."

business of the present policyholders in plaintiffs' companies, which policyholders he formerly secured and serviced during the years of his employment with the plaintiffs."

Hedberg states that, for purposes of this appeal, he does not dispute these findings.

The court then concluded that Hedberg was violating the contracts in that he was interfering with "existing policies and policyholders", that the contracts' restrictive period of one year was reasonable under all the circumstances, and that irreparable injury would be sustained by the plaintiffs if injunctive relief were not granted. It accordingly enjoined Hedberg for the year following his termination "from soliciting the insurance business of any present policyholder in plaintiffs' companies which he had formerly secured and serviced while employed by the plaintiffs".

*Jurisdictional amount.* We necessarily and initially are confronted with the jurisdictional question. A statement of some general principles is perhaps in order.

Statutes conferring diversity jurisdiction upon federal courts are, it has been said, to be strictly construed. Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Janzen v. Goos, 302 F.2d 421, 424 (8 Cir. 1962). The determination of the value of "the matter in controversy", under 28 U.S.C. § 1332(a), "is a federal question to be decided under federal standards, although the federal courts must, of course, look to state law to determine the nature and extent of the right to be enforced in a diversity case" [footnote omitted]. Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352–353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961).

Where a money judgment is sought, the amount in controversy is the sum claimed by the plaintiff "if the claim is apparently made in good faith", and

"It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. * * * But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

National Sur. Corp. v. City of Excelsior Springs, 123 F.2d 573, 576–577, 156 A.L.R. 422 (8 Cir. 1941). Absolute certainty, however is not required. Aetna Cas. & Sur. Co. v. Flowers, 330 U.S. 464, 468, 67 S.Ct. 798, 91 L.Ed. 1024 (1947).

In a replevin action, where title is being litigated, the value of the property is the amount in controversy. Gibson v. Shufeldt, 122 U.S. 27, 29, 7 S.Ct. 1066, 30 L.Ed. 1083 (1887); Peyton v. Robertson, 9 Wheat. 527, 528, 22 U.S. 527, 528, 6 L.Ed. 151 (1824).

In an injunction suit the amount in controversy may be tested by the value of the right sought to be gained by the plaintiff. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 125, 36 S.Ct. 30, 60 L.Ed. 174 (1915); Packard v. Banton, 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596 (1924); Hulsenbusch v. Davidson Rubber Co., 344 F.2d 730, 733 (8 Cir. 1965); Federated Mut. I. & H. Ins. Co. v. Steinheider, 268 F.2d 734, 738 (8 Cir. 1959). However, cost to the defendant has also been suggested as an alternative basis. Ronzio v. Denver & R. G. R.R., 116 F.2d 604 (10 Cir. 1940); Pennsylvania Ins. Co. v. Allstate Ins. Co., 226 F.Supp. 99, 102 (W.D.Va.1964); Government Employees Ins. Co. v. Lally, 327 F.2d 568, 569 (4 Cir. 1964); 1 Barron & Holtzoff, Federal Practice & Procedure (Wright Rev.1960), § 24, pp. 112–13; 1 Moore's Federal Practice (2d Ed. 1964), Par. 0.91[1], pp. 826–28.

■ In a case instituted in federal court the burden of pleading and, when challenged, of supporting jurisdictional facts by competent and preponderant proof is upon the plaintiff. McNutt v. General Motors Acceptance Corp., 298 U. S. 178, 182, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); Hulsenbusch v. Davidson Rubber Co., supra, p. 733 of 344 F.2d; Ringsby Truck Lines, Inc. v. Beardsley, 331 F.2d 14, 15 (8 Cir. 1964). It has been said that where the challenge is made upon an application for a preliminary injunction, the plaintiff must "adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." Industrial Electronics Corp. v. Cline, 330 F.2d 480, 482 (3 Cir. 1964).

■ This court has recognized that, although injury in an injunction suit may not be capable of exact valuation in money, this fact of itself does not negative federal jurisdiction. City of Memphis v. Ingram, 195 F.2d 338, 342 (8 Cir. 1952).

With these principles in mind, we turn to the complaint. The four plaintiffs purport to allege two "joint and several causes of action against the defendant". The first is one in replevin for records and materials furnished by the plaintiffs to Hedberg as their agent "pertaining to all persons who were policyholders of the plaintiffs" during the defendant's agency. It is alleged that "said items of personal property have an innate value of $15,-000.00", and that the value of the loss during the property's detention "is in the reasonable amount of $25.00 per day". The second cause of action relates to Hedberg's solicitation of the plaintiffs' existing policyholders, in claimed violation of his contract, to the detriment and "severe and irreparable damage to the plaintiffs". This damage is alleged to be $15,000.

The plaintiffs, therefore, as to the first cause of action, do allege "an innate value", whatever that may mean, of $15,000 for the personal property they seek to replevin. Hedberg, however, points out that the property repossessed by the Marshal consisted only of file folders, accident report forms, supplies, and the like, and thereby suggests that the value allegation is questionable and colorable. The trial court indicated to counsel that the resolution of the challenge to the jurisdictional amount really hinged upon the second cause of action. We share that view and focus our attention upon that aspect of the lawsuit.

For 1963, which was the calendar year preceding Hedberg's termination, the earned premiums of three of the four plaintiffs, namely, State Automobile, State Fire, and State General, on business written and serviced by Hedberg, aggregated $117,682.82. Standing against this figure were losses of $64,-612.18 and expenses of $41,915.01. This left a net profit of $11,155.63. For the five calendar years 1959 through 1963, inclusive, earned premiums of these same three plaintiffs from Hedberg business were $518,862.80. Losses were $303,-655.91, expenses were $181,635.93, and profit was $33,570.96. State Life does not maintain comparable records as to the profitability of individual agents with respect to life insurance but that company's gain in surplus and profit increased over $2,775,000 in 1959 and in successively greater amounts for each of the years 1960–63, inclusive.

If this suit were one brought by a single plaintiff, we would have little hesitancy in holding that the case presents the necessary jurisdictional amount. Although the trial court and we, at this point of the litigation's development, are not advised with exactitude as to the meaning and composition of net profits from Hedberg's operations, that figure for 1963 in fact was in excess of $10,000. This is some indication of value to the plaintiffs for the injunction year. Life insurance profits are in addition.

■ Having in mind that absolute certainty is not required, that ultimate

outcome is not conclusive; that good faith is a factor; that dismissal is justified only when there is a "legal certainty" of a deficiency in the amount claimed; and that the value of the right sought to be gained by the plaintiff is an appropriate measure, and also having in mind that mutual insurance companies such as these plaintiffs occupy a different position with respect to their policyholders than does a stock company (see Hedlund v. Farmers Mut. Auto. Ins. Co., 139 F.Supp. 535, 536–37 (D.Minn.1956); United States v. Insurance Bd., 144 F. Supp. 684, 703–705 (N.D.Ohio 1956); State Farm Mut. Auto. Ins. Co. v. Dempster, 174 Cal.App.2d 418, 344 P.2d 821, 825 (1959) ), with more direct contact, a greater element of permanency of the relationship, a better likelihood of renewals and less danger of transfer to a competing insurer, thus projecting real value beyond the premiums of a single year, we conclude that there is a present and real probability that these plaintiffs would suffer injury in excess of $10,000. Thus, were this an action by a single plaintiff, we would have a situation where the requisite jurisdictional amount has been pleaded and has sufficient support in the record for federal jurisdiction. See Hulsenbusch v. Davidson Rubber Co., supra, 344 F.2d 730, 733–34 (8 Cir. 1965).

Hedberg, in support of his position, relies particularly on Zep Mfg. Co. v. Haber, 202 F.Supp. 847 (S.D.Texas 1962) and on our own cases of S. S. Kresge Co. v. Amsler, 99 F.2d 503 (8 Cir. 1938), cert. denied 306 U.S. 641, 59 S.Ct. 582, 83 L.Ed. 1041, and Federated Mut. I. & H. Ins. Co. v. Sternheider, supra, 268 F.2d 734 (8 Cir. 1959). Zep and Sternheider were suits to restrain a defendant for an alleged violation of a covenant not to compete. Kresge was one to restrain picketing. In each, dismissal was deemed proper because of absence of the jurisdictional amount. We think these cases are all distinguishable from the present one. In Zep only injunctive relief was requested. The preceding year's activity

by the defendant had resulted in profit of $3,300 to the plaintiff. The deprival of no other benefit was intimated. The district court felt constrained to look to this $3,300 figure alone. It obviously was insufficient. In Kresge the suit failed because of absence of proof of loss of profit; proof of only decrease in sales volume was not enough. In Sternheider the district court made findings of fact only as to gross premiums and none as to net profit.

But there are four plaintiffs here, rather than one. Each has a separate corporate identity and each is engaged in a different insurance activity (except that State Fire and State General both primarily write fire and allied lines). The earned premiums, losses, expenses, and profits figures referred to above are not broken down for the three casualty company plaintiffs but reflect those items in the aggregate for all. If they were to be broken down, it is obvious that the profits cannot exceed $10,000 for more than one plaintiff. Thus if net profit were the measure, federal jurisdiction depends on these plaintiffs' ability to aggregate their claims.

Where there are multiple plaintiffs, as here, the standard is that pronounced in Troy Bank v. G. A. Whitehead & Co., 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911):

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

Pinel v. Pinel, 240 U.S. 594, 596, 36 S. Ct. 416, 60 L.Ed. 817 (1916); Division 525, Order of Ry. Conductors v. Gorman, 133 F.2d 276 (8 Cir. 1943). Chief Judge Tuttle has recently stated the standard thusly: "In other words, the obligation

to the plaintiffs must be a joint one". Eagle Star Ins. Co. v. Maltes, 313 F.2d 778, 781 (5 Cir. 1963).

We feel that the interests of these plaintiffs asserted in this lawsuit meet the standard for collectivization of claims for jurisdictional purposes. Admittedly, the four plaintiffs are separate corporations and two are engaged in insurance lines separate and distinct from the other two and from each other. Admittedly, also, the contracts with Hedberg are multiple. Although the record intimates that there is affiliation among the four and some common officers and management, we have no inclination to pierce the corporate veils here for a jurisdictional purpose. But Hedberg was an agent for all four plaintiffs. He was a State Farm representative in the full meaning of that term and he had access to all aspects of State Farm insurance. Each contract recognized this in restricting its prohibition against competitive activity to matters outside the State Farm group. Hedberg's initial (1947) and continuing relationship was with all State Farm companies and not with just one or two of them. All four mutual insurance company plaintiffs possessed a common and joint interest in Hedberg's activities, in his performance or lack of performance under their contracts with him, in his loyalty or disloyalty to their group, and in his business contentment or dissatisfaction. We therefore hold that there is a single, common and joint right which they seek to enforce; that they may aggregate their claims; and that, collectively, they present the requisite amount in controversy for federal court jurisdiction.

The following cases, we feel, lend support to this conclusion. Shields v. Thomas, 17 How. 3, 58 U.S. 3, 15 L.Ed. 93 (1854) (action by Kentucky estate's distributees to enforce their Kentucky decree in Iowa); The Connemara, 103 U.S. 754, 26 L.Ed. 322 (1880) (suit by several salvors to recover for a single salvage service); Davies v. Corbin, 112 U.S. 36, 5 S.Ct. 4, 28 L.Ed. 627 (1884) (suit to compel collection of a tax levied for the joint benefit of all the relators); Texas & Pac. Ry. Co. v. Gentry, 163 U.S. 353, 16 S.Ct. 1104, 41 L.Ed. 186 (1896) (Texas wrongful death action by several plaintiffs); McDaniel v. Traylor, 196 U.S. 415, 25 S.Ct. 369, 49 L.Ed. 533 (1905) (suit by heirs to set aside probate court judgments obtained by fraud and constituting liens on intestate's real estate); Division 525, Order of Ry. Conductors v. Gorman, supra, 133 F.2d 273, 275–76 (8 Cir. 1943) (injunction suit by union members as to contract concerning employment of conductors); Kelly v. Hartford Acc. & Ind. Co., 294 F.2d 400, 409 (5 Cir. 1961) (Louisiana wrongful death action instituted by five plaintiffs); Phillips Petroleum Co. v. Taylor, 115 F.2d 726, 728 (5 Cir. 1940), cert. denied 313 U.S. 565, 61 S.Ct. 941, 85 L.Ed. 1524 (lessors' action for breach of implied covenant under mineral lease); Phoenix Ins. Co. v. Woosley, 287 F.2d 531, 533 (10 Cir. 1961) (fire insurance suit where insured's creditor-assignees intervened as parties plaintiff).

*The contracts' non-interference provision.* The parties are in agreement that Minnesota law controls. They also appear to agree that decided Minnesota cases hold that the test of the validity of an agreement not to compete, contained in an employment contract, is one of reasonableness and that this is to be tested by the facts of the particular case, Granger v. Craven, 159 Minn. 296, 199 N.W. 10, 12–13, 52 A.L.R. 1356 (1924); see Holliston v. Ernston, 124 Minn. 49, 144 N.W. 415 (1913); People's Cleaning & Dyeing Co. v. Share, 168 Minn. 474, 210 N.W. 397, 398 (1926); Restatement, Contracts, § 515 (1932); 16 Dunnell Minnesota Digest, § 8436, p. 408 (3rd Ed. 1955); and 41 A.L.R.2d 15; that these agreements are to be strictly construed and the restraint imposed no further than the language of the contract absolutely requires, Naftalin v. John Wood Co., 263 Minn. 135, 116 N.W.2d 91, 97 (footnote 1), 100 (1962); that an injunction is not usually indicated unless irreparable injury to the plaintiff probably will result; and that

the presence or absence of personal contacts by the employee with customers, needless deprival of livelihood, fairness, and the existence in the plaintiff of a legitimate interest which deserves protection, are relevant factors, Menter Co. v. Brock, 147 Minn. 407, 180 N.W. 553, 20 A.L.R. 857 (1920); Standard Oil Co. v. Bertelsen, 186 Minn. 483, 243 N.W. 701 (1932); Granger v. Craven, supra, p. 13 of 199 N.W.; Peterson v. Johnson Nut Co., 204 Minn. 300, 283 N.W. 561, 565 (1939); Heflebower v. Sand, 71 F. Supp. 607 (D.Minn.1947).

Hedberg argues, however, that if an agreement is ambiguous it is to be construed against its author; that the insurers here were the ones who drafted the contracts; that the trial court acknowledged that the contracts' language could have been better; that the wording, "interfering in any way", appearing in Section I G is so vague as to permit any construction one chooses to place upon it; that this is only a general provision which is qualified by the later specific provision of Section IV B 4 as to competitive activity conditioned upon a written agreement from Hedberg; that the contracts therefore mean that Hedberg was obligated not to interfere with the plaintiffs' business only if he agreed in writing not to do so; that he did not so agree; that the restriction is not enforceable anyway under the precedent of Combined Ins. Co. of America v. Bode, 247 Minn. 458, 77 N.W.2d 533 (1956), and Naftalin v. John Wood Co., supra, 263 Minn. 135, 116 N.W.2d 91 (1962); and that it is illegal and unreasonable because it "is much too broad for any possible injury to the plaintiffs and it unquestionably imposes undue hardship on the defendant".

We, however, are in agreement with Judge Nordbye's conclusion, p. 799 of 236 F.Supp., that the Bode case is not controlling here. It concerned, first of all, Illinois rather than Minnesota law. Also, the trial court there had decided the issue in favor of the defendant. Here, in contrast, the trial court reached an opposite conclusion. The Minnesota

court held, p. 537 of 77 N.W.2d, that "there is ample room for the interpretation placed on the contracts by the trial court". See Standard Oil Co. v. Bertelsen, supra, p. 703 of 243 N.W. Lastly, the Bode contract was, in our view, less specific and more vague in its language than the Hedberg contracts. It contained no limitation as to time. It referred to interference with any business of the insurer, to any policy sold under the employment contract "or otherwise", and even to "any prospective policyholder". The Hedberg contracts, on the other hand, have a one year limitation and their restraint is limited to "further solicitation for or servicing of policyholders * * * and from interfering in any way for a period of one year with existing policies and policyholders".

We agree, too, with Judge Nordby's general conclusions that Section I G of the Hedberg contracts does, and was intended, to forbid competition for the one year period by solicitation, servicing, or interference with contracts secured by Hedberg and issued by these mutual companies and outstanding at the time of Hedberg's termination; that Section IV B 4 does not operate in derogation of Section I G; that the restrictive period of one year is reasonable under all the circumstances; and that irreparable harm would be sustained by the plaintiffs if Hedberg were not restrained with respect to these existing contracts and policyholders. As to this last factor see Thermorama, Inc. v. Buckwold, 267 Minn. 551, 125 N.W.2d 844, 845 (1964). We feel that the situation is not one of great potential harm to Hedberg. He was not deprived of an opportunity to make a living in his chosen field of endeavor. He was merely required to keep his hands off the established business of the plaintiffs "which he had formerly secured and serviced while employed by the plaintiffs". Finally, we are convinced that the trial court's conclusion as to the Minnesota law and its application to these contracts between the plaintiffs and Hedberg, in the light of all other facts before us on this appeal, was a per-

missible one with which we will not interfere. Homolla v. Gluck, 248 F.2d 731, 733–35 (8 Cir. 1957) ; Merrick v. Allstate Ins. Co., 349 F.2d 279 (8 Cir. 1965).

Perhaps, finally, a word as to mootness is in order despite the fact that no suggestion of the case's becoming moot has been made by either side. The trial court's injunction expired, by its terms, one year from March 2, 1964. That period has now passed. There are instances where the Supreme Court and this court have dismissed as moot appeals where the injunctive period has passed or where the situation toward which the injunction was directed has ceased to exist. See, for example, Local 8–6, Chem. & Atomic Workers v. Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed. 2d 373 (1960), where the state court had observed that the injunction against a strike had "expired by its own terms" and the question of liability for statutory monetary penalties was pending in a separate proceeding, and Flight Eng'rs.' Int'l Ass'n v. Trans World Airlines, Inc. 305 F.2d 675 (8 Cir. 1962), where an agreement the breach of which was sought to be restrained had expired even before the trial court entered its decree. However, in Division 1287, Amalgamated Ass'n of Street, Elec. Ry. Employees v. Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963), where an underlying labor dispute remained unresolved, despite the governor's termination of his earlier seizure order, the Court overruled a claim of mootness and held the case distinguishable from Local 8–6.

We note here (a) that the plaintiffs' complaint embraced a request not only for injunctive relief but for damages as well and thus the latter issue is not the subject of a separate and distinct lawsuit as was the situation in Local 8–6; (b) that the controversy concerns not the validity of the injunction per se but, rather, the validity of the restrictive agreement as to which the injunction issued; the latter is by no means moot for the issue of damages flows directly from it and, indeed, is dependent upon it: (c) that it would be a waste of time and seemingly futile to dismiss this appeal as moot now only to have the very same issues brought to us once again after damages have been determined; and (d) that review of short term restrictive covenants ought not to be so easily thwarted, see Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911), particularly when appeal from a preliminary injunction is so clearly authorized by 28 U.S.C. § 1292(a) (1).

The trial court's order is affirmed. Costs of the appellees' supplemental record filed in this court are not allowed.