E. CARLTON FOSTER and JOHN A. HATCH, Respondents, *v.* GEORGE H. R. WHITE, Appellant.

Fourth Department, March 9, 1938.

*Eugene J. Dwyer*, for the appellant.

*Halsey Sayles*, for the respondents.

CROSBY, J.   Upon a former appeal the complaint in this case was held to state a good cause of action (248 App. Div. 451; affd., 273 N. Y. 596).   The complaint alleges that the plaintiffs had established a medical center, called the Foster-Hatch Medical Group, and that they entered into a written contract with defendant by which defendant was employed, from December 19, 1932, to December 31, 1933, to practice his profession in and as a part of their organization, at a weekly salary of not less than fifteen dollars.   No other written contract was ever made by the parties.   The complaint further alleges as follows:

"15. That on December 31, 1932, the defendant received his first check for $15.00, which sum was paid each week until May 13, 1933; that on May 13, 1933 the defendant was given an increase to $20.00 a week, which sum was paid to him each week until the 20th day of January, 1934; that on January 20, 1934, the defendant was given an increase to $30.00 a week, which sum was paid to him each week until the 17th day of March, 1934; that on March 17, 1934 the defendant was given an increase to $35.00 a week, which sum was paid to him each week until the 5th day of May, 1934; that on May 5, 1934 the defendant was given an increase to $40.00 a week, which sum was paid to him each week until the 18th day of August, 1934; that on August 18, 1934 the defendant was given an increase to $45.00 a week, which sum was paid to him each week until the 5th

day of January, 1935; that on January 5, 1935, the defendant was given an increase to $55.00 a week, which sum was paid to him each week until the 24th day of August, 1935, at which time he left the employ of The Foster-Hatch Medical Group; that in addition to said weekly payments the defendant received a bonus on August 11, 1934, of $607.09, a bonus on September 20, 1934 of $303.54 and a bonus on April 12, 1935, of $151.77.

"16. That on August 24, 1935 the defendant left the employ of The Foster-Hatch Medical Group," etc.

The complaint further alleges that upon defendant's departure from the employment of plaintiffs he started to practice medicine on his own account, and continues to do so, in violation of a provision of the written contract which reads: "It is further hereby agreed that the said Dr. George White is not to engage in or practice his profession as a physician and surgeon, either directly or indirectly, in the County of Yates, either by himself or with any other person, firm, co-partnership or corporation at any time, without the consent in writing of the party [parties] of the first part, except while in the employ of, or while being associated with, the party [parties] of the first part."

Plaintiffs have obtained a judgment perpetually enjoining defendant from practicing medicine, on his own account, within Yates county. No fault is found with any of the findings of fact which the referee made. Among them are the following:

"20. That the defendant entered upon his employment with the plaintiffs in December, 1932, under said agreement and performed services satisfactory to the plaintiffs until the termination of defendant's employment by the plaintiffs sometime during the third week in August, 1935.

"21. That on or about July 1, 1935, the plaintiffs submitted to the defendant a certain contract denominated 'Articles of Agreement' which provided, among other things, that, if the defendant failed to sign the said 'Articles of Agreement' by July 15, 1935, he would cease to be in the employ of the plaintiffs.

"22. That the defendant refused to sign said 'Articles of Agreement.'

"23. That the plaintiffs at sometime after the middle of August, 1935, acting through their duly authorized agent and attorney, Mr. Homer Pelton, notified Mr. John Sheridan, the defendant's attorney, that they wanted the defendant to leave on a subsequent fixed date.

"24. That after the termination of defendant's employment by the plaintiffs and at sometime in the third week of August, 1935, the defendant went to Buffalo for a few days and returned thereafter

to Penn Yan, New York, where he entered upon the practice of his profession.

"25. That at the time of the termination of defendant's employment by the plaintiffs, the defendant turned back to the plaintiffs the confinement and hospital cases, and all other cases then entrusted to his charge and care. Thereafter some of said patients including two women who were about to be confined declined to be treated by the Group and returned to the defendant who gave them his professional care.

"26. That the defendant, after the termination of his employment by the plaintiffs, did not solicit the patronage of any of the patients of the plaintiffs, and the defendant did not take away with him any memorandum or paper containing a list of, or data relating to, the patients of the plaintiffs."

It, therefore, now appears that plaintiffs discharged defendant from their employment. The part of the complaint which is quoted above would lead one to believe that defendant broke his contract, or at least voluntarily left the employment of the plaintiffs. But the evidence establishes, and the referee has found, that the plaintiffs, in August, 1935, served notice upon the defendant "that they wanted the defendant to leave," etc.

Under such a state of facts it becomes important to determine whether or not defendant was serving plaintiffs under a contract of employment at the time he was discharged, such discharge being for no better reason than that he refused to enter into a different kind of contract. For if defendant was working under a contract in August, 1935, plaintiffs would not be justified in discharging him merely for the reason that he would not execute a different contract. No other excuse was even suggested. Indeed the 20th finding of fact, above quoted, finds that defendant "performed services satisfactory to the plaintiffs until the termination of defendant's employment by the plaintiffs," etc.

It is doubtless true, as claimed by plaintiffs, that contracts, other than leases, do not automatically renew themselves from year to year. (*Chase* v. *Second Avenue R. R. Co.*, 97 N. Y. 384.)

Nevertheless contracts of employment for yearly periods, year after year, could be made orally. Such contracts could even arise from conduct alone. If A should employ B to work for him for a year at a given wage, and, without a word being said, B should continue to do A's work for another year to A's knowledge, and under A's direction, could it be said that there was no contract of employment during the second year? The answer to this question so far as it applies to the instant case, is found in the testimony of one of the plaintiffs. Dr. Foster was testifying in regard to a conversation he

had with defendant in January, 1934, at a time when a proposed new written contract was under discussion. " Q. You understood, didn't you, and were acting upon the assumption that the contract of December, 1932, was operative upon you, as well as upon Dr, White, as to salary, as to that time? A. My impression. Q. In other words, it was your understanding this contract of December, 1932, was carrying right along through on both sides, up to December, 1934, that was clearly, entirely, understood? A. My assumption. Q. You were working on that assumption? A. That was not my understanding. Q. What were you working on? A. Subsequent agreements. Q. Now, you tell the Court there was a subsequent agreement that took the place of this one? A. Not subsequent agreements, I would say subsequent changes. Q. When it came to the question of salary, you want us to understand this young man was still working under the December, 1932, agreement, as late as that? A. As I said before, it was my impression. Q. Well, how much longer after that time did it continue to be your impression he was working under the 1932 contract? A. I was actually under the impression that the contract held over. Q. From year to year until he left? A. That was my impression. Q. You understood that December, 1932, contract was operative and in force, not only as to the restrictive covenant but as to the salary provision right down through to the time you presented this proposal [for a new contract]? A. My opinion. Q. Up to the time you told him to either sign the contract of 1935, or sever his relations, you understood that? A. I did."

It is a well-settled rule of law that the practical construction which parties to a contract give to it is of great weight in determining what their agreement really is. (*Woolsey* v. *Funke*, 121 N. Y. 87; *Carthage Tissue Paper Mills* v. *Village of Carthage*, 200 id. 1.)

The fact that, from time to time, for nearly three years, plaintiffs increased defendant's salary, does not militate against the claim that the parties were continuing to operate under the 1932 contract, renewing the same from year to year, for the original agreement was that plaintiffs would pay defendant " *not less* than fifteen dollars per week."

The acquiescence of the parties here in operating year after year under the 1932 contract is equivalent to an express agreement to a continuance, or renewal from year to year, of the original contract.

Plaintiffs having discharged defendant for no reason other than that he refused to enter into a different contract with them, one which he did not like, are in no position to seek the aid of equity to enforce what seems like a harsh provision of the contract. For, if we take the view which plaintiffs urge in their brief, that the contract

of December, 1932, was never renewed, that no contract between the parties existed after December 31, 1933, that thereafter defendant's employment continued merely by sufferance of the plaintiffs, then the contract was an exceedingly harsh one, by which, for the salary of fifteen dollars a week, for a period of one year, defendant has sold his right ever to practice his profession within the county where his entire professional life has been spent. We prefer the view that plaintiffs by terminating defendant's employment for an improper reason have deprived themselves of the aid of equity.

In addition to the referee's finding No. 20, hereinbefore quoted, in which it is found that defendant " performed services satisfactory to the plaintiffs until the termination of defendant's employment *by the plaintiffs*," the referee also found defendant's 8th request, which is identical with finding No. 20, except that it is found that defendant performed services satisfactory to plaintiffs " *under said agreement*," until the termination of defendant's employment by the plaintiffs. Here is a direct finding, fully supported by the evidence, not only that plaintiffs terminated defendant's employment, but that they did so at a time when the defendant was performing satisfactory services " under said [original] agreement." And the only reason proven, or even claimed, for terminating said employment, was that defendant refused to enter into a different agreement. In order to make our decision consistent with the proof, with the findings made and with the theory of the complaint itself, this additional finding should be made: (a) That the written agreement, of December 19, 1932, was, by consent of the parties, carried over, extended and continued until August 24, 1935. Also the following new finding should be made: (b) That plaintiffs discharged defendant from their employment for an insufficient and invalid reason.

We are aware that the new finding designated (a) above, as well as the referee's finding No. 8 of defendant's requests, are inconsistent with one of the defenses set up in defendant's answer and repeated in his bill of particulars, where he alleges, in substance, that the original agreement was terminated and a new one entered into. These allegations of the answer are entirely contrary to the proof and to the referee's finding No. 8 of defendant's requests. However, a motion for dismissal of the complaint was made on the ground that the original contract was continued by the parties from year to year, and that plaintiffs breached it by discharging defendant. That was the main issue upon which the case was tried and submitted and argued on both sides in the briefs in this court. And upon that issue the proof and the findings are with the defendant. Indeed, as we read the complaint upon the former appeal, and as we read it now, it was the theory of the plaintiffs that the contract was carried over

and continued from year to year, and that defendant breached it by quitting his services in 1935. The plaintiffs cannot complain if their own theory be adopted.

The referee refused to find defendant's 9th request: " 9. That said agreement of December, 1932, was carried over and continued from year to year and was in full force and effect until the termination of defendant's employment by the plaintiffs in the third week of August, 1935."

But he stated, as his reason for the refusal, that defendant's answer alleged the termination of the 1932 agreement by consent of the parties. In view of the allegations of the complaint, the way the case was tried, the manner in which it was briefed and argued in this court, we think that defendant's answer should not stand in the way of a decision warranted by the evidence, and otherwise compelled by the findings made by the referee.

The judgment should be reversed on the law and the facts, with costs, and the complaint dismissed, with costs.

All concur. Present — Sears, P. J., Crosby, Lewis, Taylor and Dowling, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. New findings of fact made.