**DIVISION 525, ORDER OF RAILWAY CONDUCTORS OF AMERICA et al. v. GORMAN et al.**

**No. 12341.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 8, 1943.

274

Walter L. Brown, of El Dorado, Ark., for appellants.

Bruce E. Dwinell, of Chicago, Ill., and Thomas S. Buzbee, of Little Rock, Ark., for trustees of Chicago, R. I. & P. Ry. Co.

A. F. House, of Little Rock, Ark., and V. C. Shuttleworth, of Cedar Rapids, Iowa, for third party defendant.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a decree which dismissed appellants' suit by which they sought an injunction against defendants restraining them from violating the terms of a contract alleged to have been executed in their behalf concerning the employment of conductors over a portion of railroad trackage of the Chicago, Rock Island and Pacific Railway Company.

Plaintiffs commenced this suit in the state court against defendants who are trustees in reorganization proceedings of the Chicago, Rock Island and Pacific Railway Company, hereinafter referred to as the Rock Island.

Plaintiff, Division No. 525, Order of Railway Conductors of America, is a unit of the Order of Railway Conductors of America which is a voluntary unincorporated association of railway conductors. Some 27 individual plaintiffs, members of Division No. 525, are conductors employed on the Rock Island. The complaint alleged that the individual plaintiffs are members of Division No. 525, Order of Railway Conductors of America, and were conductors employed on the property of defendants holding priority rights which were secured to them by a contract executed by the Order of Railway Conductors through its central committee; that contrary to the terms and conditions of the contract the defendants are employing conductors from other divisions on the trackage designated as trackage over which they have seniority rights, thus depriving them of the rights to which they are entitled under the provisions of the contract, copy of which was attached to the complaint. It is also alleged that the conduct of defendants in violation of the terms of said contract had caused, and was causing, a loss to plaintiffs "of large sums of money and of their seniority rights over said trackage". They prayed that a writ of injunction be issued restraining defendants from employing conductors in the operation of the trains over the trackage described as 28 miles of track between Haskell and Biddle, and between Haskell and Little Rock, on defendants' lines in Arkansas, in violation of said contract.

The defendant trustees removed the cause to the United States District Court on the ground of diversity of citizenship and on the allegation that the amount and value involved exceeded $3,000. Defendants then answered admitting the execution of the contract as alleged in plaintiffs' complaint but alleged that it had been cancelled. That pursuant to the cancellation of the contract D. P. Neely, J. F. King and J. F. Geister, conductors employed by defendants and members of Division No. 566, Order of Railway Conductors, had been placed on the runs including the 28 miles of trackage in controversy, the said conductors claiming to have seniority rights on said runs. That these three conductors were residents of Arkansas, and that they were placed on said runs pursuant to request of the Order of Railway Conductors. Defendants asked that these conductors be made third party defendants, and that upon hearing the court enter a declaratory judgment defining the rights of all the parties under the rules of the Order of Railway Conductors and the contracts between said Order and the defendants.

By consent of the parties to the suit the court entered an order making D. R. Neely, J. F. King and J. F. Geister third parties defendant. Thereafter plaintiffs filed motion to remand on the grounds that the added parties defendant were residents of the State of Arkansas, and that the issue was in fact between citizens of the State of Arkansas and that the amount in controversy was not in excess of $3,000. At the hearing of this motion it was stipulated "that by having seniority rights over the Haskell-Biddle track in 1940 the Arkansas Division collected in salaries $4152.49 more than it would have collected if seniority rights over the track had belonged to Louisiana (Division)".

The court found that the amount involved was in excess of $3,000; that the court had acquired jurisdiction by reason of diversity of citizenship and, therefore, overruled the motion to remand.

Neely, King and Geister filed an answer in which they alleged that the contract pleaded by the plaintiffs as the basis for their suit had, by the proper authorities, been cancelled. To this answer plaintiffs replied alleging that the purported cancellation of the contract was arbitrary and beyond the power and authority of the officer purporting to cancel the same and was null and void.

On the merits the court held that the contract forming the basis of plaintiffs' action, had been cancelled and thereupon entered decree dismissing plaintiffs' cause of action.

On this appeal plaintiffs challenge (1) the jurisdiction of the court; (2) the correctness of the court's finding and conclusion that the contract sued upon had been legally cancelled.

The jurisdiction of the court is challenged on two grounds: (1) That the amount or value in controversy did not exceed, exclusive of interest and costs, the amount of $3,000. All of the plaintiffs claimed an undivided common interest in the right which they seek to enforce. They did not ask separate judgments and it appears without dispute that the value or amount of the aggregate rights of all the plaintiffs exceeds $3,000. Their claim is bottomed on the pleaded contract and

was asserted as an entity. We think the jurisdictional amount was involved. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L. Ed. 1111; Troy Bank v. G. A. Whitehead & Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81; Phillips Petroleum Co. v. Taylor, 5 Cir., 115 F.2d 726; Healy v. Ratta, 292 U. S. 263, 267, 54 S.Ct. 700, 78 L.Ed. 1248; Purcell v. Summers, 4 Cir., 126 F.2d 390.

The rule as stated by the Supreme Court in Troy Bank v. Whitehead, supra, is as follows: "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

What is said by the court in Phillips Petroleum Co. v. Taylor is here apposite. It is there said: "The interest of each of the plaintiffs was derived from the same instrument, the assigned mineral lease, and the liability of the defendant, too, was based solely upon it. The uncaptured produce from the mineral lease, recoverable only through the implied covenant, constituted the sole interest of all the plaintiffs; and the concern of the defendant in this suit was not to avoid any separate demand of the plaintiffs, but to escape the liability common to all. The demand was for a lump sum. The appellant was interested in the amount of that sum, and not the division to be made of it between the opposing parties." [115 F.2d 728.]

It was stipulated that in 1940 the seniority rights involved were worth $4,-152.49. It was also stipulated that with any increase in train traffic the value would be in excess of that amount. Plaintiffs sought in effect to compel defendants to comply with the contract which presumably would remain in force indefinitely, so that there was in controversy not only the value of the seniority rights for one year but for succeeding years. In a suit for an injunction the value to plaintiff of the right which he seeks to protect is the measure for jurisdictional purposes. Plaintiffs rely upon the decision of the Supreme Court in Thomson, Trustee, v. Gaskill et al., 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951. But that decision is not to the contrary. In that case plaintiffs, for convenience and economy, sought to enforce individual rights. They alleged that under certain written contracts which were not attached to the complaint that they were accorded the right to perform certain work and prayed an accounting "and that the amount of work that each of the plaintiffs has been wrongfully deprived of be determined, and that judgment be given each of the plaintiffs for such an amount as he would have earned if his right to perform the work had not been wrongfully denied him". [Gaskill v. Thomson, 8 Cir., 119 F.2d 105, 106.] In that case a separate judgment for each plaintiff was demanded, while in the instant case it is not claimed that any particular individual is entitled to any particular amount of damages but the claim is that all of the plaintiffs, as members of Division No. 525, have an undivided interest in the contract sued upon and are collectively entitled to an injunction to prevent its breach. We think the jurisdictional amount was in controversy.

The second ground of challenge is that there was not the requisite diversity of citizenship. As originally brought, and at the time of its removal to the Federal Court, it is clear that the controversy was between citizens of different states. On removal, therefore, the Federal Court acquired jurisdiction. It is claimed that this jurisdiction was destroyed by the subsequent action of the court in bringing in parties who were citizens of the State of Arkansas, as parties defendant. Generally speaking there are three classes of parties known as "(1) proper parties; (2) necessary parties; (3) indispensable parties". "Proper" or "formal" parties include those who are not interested in the controversy between the immediate litigants but have an interest in the subject matter which may be conveniently settled in the suit. "Necessary parties" are those who have an interest in the subject matter and who are within the jurisdiction of the court, but who are not so indispensable to the relief asked as would prevent the court from entering a decree in their absence. "Indispensable" parties are those whose interests are so bound up in the subject matter of litigation and the relief sought that the court cannot proceed without them, or proceed to a final judgment without affecting their interests.

It is contended by plaintiffs that "the real parties in interest are the plaintiffs seeking joint rights over the twenty-eight

miles of trackage, on the one hand, J. K. King, J. F. Geister, and D. P. Neely for themselves and the other members of Division No. 566, claiming the contract to be interdivisional, on the other hand."

But plaintiffs assert no rights in their complaint against members of Division No. 566, but they claim that under the contract they are entitled to certain priority rights. The added defendants were not indispensable parties to the cause of action alleged in plaintiffs' complaint. The court desired that they be made parties, not because they were indispensable to the action brought by plaintiffs, but because defendants desired to secure a declaratory judgment defining the rights of the parties. The jurisdiction of the court once acquired could not be ousted by action of a defendant seeking affirmative relief.

Plaintiffs were not seeking a declaratory judgment and the court had jurisdiction of their cause of action. The assertion of a set-off or a counterclaim in excess of the jurisdiction of a court of limited jurisdiction will not oust the jurisdiction with respect to the claim asserted in the complaint, that being within the jurisdiction of the court. Nelson v. Meyer, 66 Colo. 164, 180 P. 86; Jefferson Gardens v. Terzan, 216 Wis. 230, 257 N.W. 154; Sells v. Elmergreen, 183 Wis. 532, 198 N. W. 267. It is important to have in mind that at the time of removal the action pleaded was between resident plaintiffs and nonresident defendants. Certainly unless the additional parties were indispensable to a decision on plaintiffs' cause of action, an intervention did not destroy the ground of diverse citizenship. As said by the Supreme Court in Wichita R. & Light Co. v. Public Utilities Comm., 260 U.S. 48, 43 S.Ct. 51, 53, 67 L.Ed. 124, "The intervention of the Kansas Company, a citizen of the same state as the Wichita Company, its opponent, did not take away the ground of diverse citizenship. That ground existed when the suit was begun and the plaintiff set it forth in the bill as a matter entitling it to go into the District Court. Jurisdiction once acquired on that ground is not divested by a subsequent change in the citizenship of the parties." See, also, Williams v. Keyes, 5 Cir., 125 F.2d 208, 209; Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co., 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081; National Surety Corp. v. City of Excelsior Springs, 8 Cir., 123 F.2d 573; Home Ins. Co. of New York v. Trotter, 8 Cir., 130 F.2d 800.

Plaintiffs sought to compel defendants to comply with the contract alleged. Defendants answered that the contract was not in force and that they had been notified by a representative of the Order of Railway Conductors that it should be ignored and that the seniority rights over the Biddle track should be given without reference to this contract. The answer presented an issue as between plaintiffs and defendants as to whether this contract was still in force and of binding effect upon defendants. That issue was not eliminated by the fact that defendants asked that members of Order of Railway Conductors, Division No. 566, be made parties nor by the fact that the defendants asked for a declaratory judgment. We think the added parties were not indispensable parties. They were interested in the controversy but a judgment could have been rendered between the plaintiffs and defendants before the court without affecting their interests. True, they would not have been bound by the judgment, yet the question would have been settled as between the plaintiffs and defendants. We conclude on this phase of the case that the court acquired jurisdiction and that that jurisdiction was not thereafter ousted.

There remains for consideration the merits of the controversy, to-wit: Was the contract pleaded by plaintiffs in force and effect?

The Railway Labor Act, Title 45 U.S. C.A. § 152 provides that: "All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute."

The Order of Railway Conductors was the bargaining agent duly designated under this Act. The agreements here in controversy were entered into by the defendants with the duly authorized representative of the Order of Railway Conductors.

The Order of Railway Conductors is subdivided into divisions which are usually located at division points of the railway, and a division ordinarily includes the territory which is known as a seniority district. The members of the Order include conductors of railways within the United States, and its governing body is composed

of certain officers and one delegate from each of its local divisions. Under the laws of the Order there is a General Committee of Adjustment whose jurisdiction is limited to the lines of the Rock Island. The chairman of this committee when authorized by his committee would represent the Order in negotiations entered into with the Rock Island defining the terms under which conductors should be employed and fixing the seniority rights. The Rock Island entering Arkansas at Memphis runs to Little Rock where it branches into two lines, one extending west to Oklahoma, and the other southeast to Louisiana. Biddle is a suburb of Little Rock; Haskell is 28 miles from Biddle on that part of the line running southeasterly to Louisiana. Members of the two divisions of the Order, No. 566 of Arkansas Division and No. 525 the Louisiana Division, assert conflicting claims of seniority rights over this trackage. It has been transferred from one division to the other a number of times.

The General Committee in 1941 adopted a resolution giving the Louisiana Division seniority rights over this trackage, and O. L. Coulter, the general chairman, pursuant to this resolution, entered into a contract with the Rock Island giving effect to the resolution. This contract was dated March 3, 1941, and is the contract relied upon by plaintiffs. In the meantime the Arkansas Division (Order No. 566) appealed from the action of the General Committee to the President, who, under the laws of the Order, has power to "confirm, reverse, or annul and remand for reconsideration". His decision is final. On this appeal he held that the action of the General Committee in depriving the Arkansas Division of the seniority rights over the Biddle track was violative of the Order's law and of the resolution which had been adopted. Acting upon this decision, Coulter, as chairman of the General Committee, in November, 1941, entered into another agreement with the Rock Island whereby the contract of March 3, 1941, was rescinded and the former seniority status was restored.

The defendants assert that they have dealt with the designated representative of the Order, that they did this in entering into the contract of March 3, 1941, and they dealt with the same designated representative when they entered into the contract of November, 1941, terminating the contract, and that having so done they have complied with the law and that they had a right to assume that O. L. Coulter, the general chairman, was acting with full authority and that agreements with him were valid. They say: "If such an agreement can be set aside by individual lodges or members of the Order, then railroads can never enter into an agreement with the Order as bargaining agent and the whole system of collective bargaining on the part of the employes, provided by the Railway Labor Act, will be destroyed."

It appears without dispute that the defendants have dealt with the representative of the Order in effecting the collectively bargained agreements, and they cannot be required to examine into the specific authority granted the representative of the Order. Under the laws of the Order the decision of the President on appeal was binding, it was apparently made in good faith, and courts will not ordinarily interfere with the decisions of the tribunals of a voluntary unincorporated labor organization. The court cannot substitute its judgment for that of the President of the Order. George T. Ross Lodge No. 831 v. Brotherhood of Railroad Trainmen, 191 Minn. 373, 254 N.W. 590; Louisville & N. R. Co. v. Miller, 219 Ind. 389, 38 N.E.2d 239; Ryan v. New York Cent. R. Co., 267 Mich. 202, 265 N.W. 365; Order of Railway Conductors of America v. Shaw, 189 Okl. 665, 119 P.2d 549.

While we think it is not within the province of the court to determine the regularity of the procedure which prompted the representative of the Order to enter into the agreements involved, yet a study of the record convinces that the procedure was that prescribed by the laws of the Order and, hence, the decision of the President was valid and binding on the plaintiffs as well as on the members of Division No. 566.

The judgment appealed from is, therefore, affirmed.