**GASKILL et al. v. ROTH et al.**

No. 13055.

Circuit Court of Appeals, Eighth Circuit.

Oct. 19, 1945.

Rehearing Denied Nov. 7, 1945.

S. L. Winters, of Omaha, Neb., for appellants.

Wymer Dressler, of Omaha, Neb. (Robert D. Neely and Nye F. Morehouse, both of Omaha, Neb., on the brief), for appellee Chicago & N. W. Ry. Co.

W. C. Fraser, of Omaha, Neb., and V. C. Shuttleworth, of Cedar Rapids, Iowa, for appellees Order of Railway Conductors, Brotherhood of Railway Trainmen, and George Kimball.

Before WOODROUGH, JOHNSEN, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought May 8, 1939, by forty-one conductors and brakemen employed by the Chicago & North Western Railway Company in its Eastern or Nebraska Division against the railroad and one Kimball, an employee of the road in its Sioux City Division. The Order of Railway Conductors and Brotherhood of Railroad Trainmen were also made parties defendant. After hearing, the case was dismissed and decision of this court on appeal reversing the dismissal, which includes a statement of the nature of the action, is reported in Gaskill v. Thomson. 8 Cir., 119 F.2d 105. On certiorari the Supreme Court remanded the case to the District Court without prejudice to an application for leave to amend the bill of complaint. 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951. Amended pleadings were filed and the case proceeded to final judgment by the terms of which it was again dismissed in accordance with the court's complete findings and conclusions which were against the plaintiffs. This second appeal has been taken by the plaintiffs to reverse that judgment.

In its substance the claim of the plaintiffs is that by virtue of the agreement (referred to as Exhibits "A" and "B") entered into between the North Western Railway Company and the Brotherhood of Railroad Trainmen and the Order of Railway Conductors under which the plaintiffs work for the North Western Railway (the relevant parts of which are set out in the amended pleadings), the plaintiffs have had and have the right to participate in doing a certain percentage of the work in an order of seniority among themselves over that certain railroad trackage from Omaha, Nebraska, through Blair, Nebraska, to California Junction, Iowa (being part of certain runs between Omaha and Sioux City, Iowa), and that the North Western has breached and will continue to breach the contract by diverting their part of the

work from the conductors and brakemen of the North Western's Nebraska Division, including the plaintiffs, to conductors and brakemen of the Sioux City Division of the North Western. The plaintiffs' claim of right to perform the work is rested on the contention that the trackage described is and has been a part of the Nebraska Division of the North Western Railroad, and that the railroad's operations over that trackage into and from the Sioux City Division of the railroad are inter-division operations and that the said agreement accords the plaintiffs, as conductors and brakemen of the Nebraska Division, a right to participate in the inter-division work and in the work of said operations.

The position of the North Western is that the trackage between Omaha and Blair (which includes about 24 miles of the total 31 miles of the described trackage) belongs to the Chicago, St. Paul, Minneapolis & Omaha Railway Company (referred to as the M. & O.), and is not, and has never been, a part of the Nebraska Division of the North Western, and that the agreement does not award any proportion of the work in question to the class of workmen to which the plaintiffs belong. The line of the M. & O. from Omaha to Sioux City is on the west side of the Missouri river, which it crosses at Sioux City. The North Western's line is practically parallel on the east side of the river, but as it does not reach to Omaha, its Omaha-Sioux City traffic has been moved into and out of Omaha during different periods over different railroads. Since 1930 it has moved over the described trackage of the M. & O. Railroad. The North Western and the M. & O. Railroads are distinct and separate entities and are so operated. On May 1, 1930, the North Western and the M. & O. adopted and put into effect a new plan for the handling of the traffic of the two roads between Omaha and Sioux City under which the trackage of the M. & O. in question here is used between Omaha and Blair, but the volume of transportation on the M. & O. as a whole was reduced and that on the North Western was increased. The change became necessary for economical operation, in that the M. & O. Omaha-Sioux City line is longer and its grades and curves heavier than on the North Western, and much larger trains move over the North Western. The change

affected the amount of work to be done on the respective roads, but it was put into effect and has been carried out since August 19, 1930, in full recognition by the railroads of their collectively bargained labor agreements, including the agreement of the North Western on which the plaintiffs rely. Neither of the two railroads has at any time denied the existence or validity of said agreements, nor that such rights to work as are granted to their respective employees by the terms of the agreements inure to all the employees in the classes designated (whether they are members of the unions or not), but the change in the operations of the two railroads affecting the amount of work available to certain men resulted in disputes among the men as to the division of the work among them. The North Western's position is that all of such disputes, including the claims asserted by plaintiffs in this action, have been submitted to and considered by the officers and tribunals authorized under the agreement, that the work has been allotted in accordance with the decisions of such authorities agreed to by the railroads, and that such decisions so agreed to constitute the collective bargain agreement applicable to the particular Omaha-Sioux City operations of the two railroads here involved.

The defendants Order and Brotherhood also pleaded and assert that the claims of the plaintiffs herein have been duly determined against them by the decisions, rulings and interpretations of the representatives of the class and craft of conductors and trainmen, the Grand Lodge officers of the Order and of the Brotherhood and the highest tribunals thereof, and that plaintiffs are bound by the action of their authorized representatives and have no right as a class or individually to maintain the action.

In the order of procedure followed on the trial in the District Court all the evidence was taken and ruling was requested first on the issue of whether there was a breach of the agreement by the North Western causing damage to plaintiffs, and the court having ruled on that issue against plaintiffs entered its findings and conclusions and judgment of dismissal without requiring an audit or accounting of the amounts or allocation of damages claimed by plaintiffs.

The findings of fact and conclusions of law on which the District Court based its judgment of dismissal are as appended.[1]

It is contended for appellants on this appeal that the trial court was clearly in error in finding that the agreement on which

[1] "Findings of Fact and Conclusions of Law.

"Findings of Fact.

"1. That Exhibits A and B attached to the amended complaint, being the general collective bargaining schedules or agreements between the carrier and its employees, is the only bargaining agreement shown establishing seniority rights for the employees of the Chicago and North Western Railway, including the plaintiffs, and that paragraph 93 of each schedule limits the seniority rights to the division on which the employee is employed.

"2. A division on the Chicago and North Western Railway Company is defined in the book of rules of the company as a section of track under the jurisdiction of the superintendent.

"3. The Chicago, St. Paul, Minneapolis and Omaha Railway Company track between Omaha and Blair is not a part of the Nebraska Division of the Chicago and North Western Railway Company, but is a part of the Chicago, St. Paul, Minneapolis and Omaha Railway Company, which is a separate corporation. The disputed runs as to which the plaintiffs claim that Nebraska Division employees of the Chicago and North Western Railway should participate are certain trains operating between Omaha and Sioux City, and operating between Omaha and Blair, over the line of the Chicago, St. Paul, Minneapolis and Omaha Railway; between Blair, Nebraska, and California Junction, Iowa, over Chicago and North Western track, which is a part of the Nebraska Division of Chicago and North Western Railway, and between California Junction and Sioux City, Iowa, over the Chicago and North Western track, which is a part of the Sioux City Division of that Railway. These runs were inaugurated in the year 1930 to carry the through traffic between Omaha and Sioux City on both railroads in order to save operating expenses of the Chicago, St. Paul, Minneapolis and Omaha Railway Company, which theretofore had hauled its through traffic between Omaha and Sioux City over its own line on the west side of the Missouri river. Prior to the inauguration of these runs, the Nebraska Division men of the Chicago and North Western Railway never operated any trains on the Sioux City Division of that railroad, and likewise the Sioux City Division men of that railroad never operated any trains on the Nebraska Division of that railroad. The division of the work on account of this new service

was a matter of negotiation and controversy between the men of both railroads and was finally submitted to the regularly constituted tribunals of the unions on both railroads, who decided by the letter of August 19, 1930, that said runs were inter-railroad runs and not inter-division runs, and that the work should be divided approximately 75 percent to Chicago and North Western crews and 24 percent to Chicago, St. Paul, Minneapolis and Omaha crews; that pursuant to such decision the Chicago and North Western crews from the Sioux City Division have performed 75 percent of the runs in mileage, and the crews of the Chicago, St. Paul, Minneapolis and Omaha Railway have performed 25 percent thereof.

"4. That the character of the service involved in said run is peculiarly within the province of collective bargaining; that plaintiffs have failed to show any collective bargaining entitling them, or men employed on the Nebraska Division of the Chicago and North Western Railway Company to participate in said runs.

"5. That the Order of Railway Conductors and Brotherhood of Railroad Trainmen are the representatives respectively of the class and craft of conductors and brakemen on the Chicago and North Western Railway and also on the Chicago, St. Paul, Minneapolis and Omaha Railway Company.

"6. There is no charge contained in the pleadings of the plaintiffs, and no proof that the decision of the presidents of the Order of Railway Conductors and Brotherhood of Railroad Trainmen was arbitrary, fraudulent and capricious, and the Court finds that same was rendered in good faith and in conformity with the provisions of the constitutions of the respective organizations following a full and mature consideration of the dispute, and further finds that the decision, in light of the facts presented, was fair and equitable.

"Conclusions of Law.

"1. The duty of the carrier to bargain collectively with its employees is established by the Railway Labor Act of the United States, and when a collective bargain has been established, the carrier is not at liberty, so long as the bargain exists, to violate it.

"2. The collective agreement with respect to the runs involved in this case to the effect that they are to be regarded as inter-railroad runs rather than inter-division runs, having been made by the duly constituted authorities of the Unions, and

the plaintiffs' action was based limited the seniority rights of the plaintiffs to the division of the North Western Railroad on which they were employed and in finding that the M. & O. track between Omaha and Blair used in the Omaha-Sioux City runs in controversy is not a part of the Nebraska Division of the North Western road.

Plaintiffs have not denied that said agreement does specifically provide that the seniority rights of employees in the class of plaintiffs "shall be confined to the division on which they hold rights", but they point to certain provisions of the agreement which cover the instances in which men are assigned to work on inter-division runs, that is, over more than one division of the railroad under more than one of its superintendents. In such instances the agreement requires an adjustment to be made for the men who are assigned to such runs according to the percentage of miles run over each division,[2] and plaintiffs contend that the effect of such provisions is to give them the same kind of right to do the railroad's work in connecting divisions as the agreement accords to them in the division in which they hold seniority rights. It is contended that the court should have found that the work on the Omaha-Sioux City runs established by the two railroads in 1930 is such inter-division work and that plaintiffs became entitled to perform a share of it by reason of the said provisions relating to adjustments in respect to inter-division runs to which men may be assigned.

The testimony from which the findings of the court were drawn is voluminous and the history of the relations between the North Western and the M. & O. Railroads and of their respective operations between Omaha and Sioux City over a long period of time was fully developed. Each of the different plans under which the North Western Omaha-Sioux City traffic was moved into and out of Omaha gave rise to labor problems, and it clearly appears that no solution thereof was ever attempted except in full recognition of the validity and binding effect of the collective bargain agreement evidenced by Exhibits "A" and "B" attached to plaintiffs' complaint, including the collective bargaining provisions thereof to the extent of the coverage. It also clearly appears that the plan adopted by the North Western and the M. & O. Railroads on May 1, 1930, for the movement of the main volume of the traffic of the two roads between the cities on the North Western tracks for the greater part of the distance, and on the M. & O. tracks between Omaha and Blair, amounted in effect to a new service, as stated by the District Court, resulting in "negotiations and controversy concerning the division of work between the men of both railroads." The M. & O. brakemen and conductors work in their respective divisions under the same kind of collective bargain agreement as do the North Western men, and it is ap-

acquiesced in and acted upon by the management of the carrier, is binding upon both the carrier and these plaintiffs, and the Court in this case would have no authority to change said agreement, and the plaintiffs have no standing to demand that the Court either change the agreement or make a new one for the parties.

"3. Inasmuch as the bargaining agreement establishing the disputed runs as inter-railroad runs and not inter-division runs does not accord to these plaintiffs, nor to any employee regularly employed on the Nebraska Division of the Chicago and North Western Railway, participation in the runs, plaintiffs have no standing to demand such participation, and therefore have no right to the relief prayed for either by way of injunction or damages.

"4. The decision of the presidents of the Order of Railway Conductors and Brotherhood of Railroad Trainmen with respect to the manning of the service upon and across the rails of the two railroads between Omaha and Sioux City was pe-

culiarly a matter for collective bargaining, and having been made in good faith and in accordance with the constitutions of the respective unions is binding upon the class and craft of employees for which the unions were the bargaining agent under the provisions of the Railway Labor Act. The Courts will not ordinarily interfere with the decisions of tribunals of voluntary unincorporated labor organizations. The Court cannot substitute its judgment for that of the respective presidents of the respective unions. The management of the railroads involved agreed to the proposal determined by the chief executives. The carriers were obligated to and did deal with the designated representatives of the employees."

[2] "Freight Assignment Over More Than One Division. 60. When conductors run over more than one freight district under more than one Superintendent, percentage of miles run over each district will govern in assignment to such runs."

parent that no determination as to division of the work in the new service could be made without first settling the groups between which the division of work had to be made. The determination was that the runs in the new service, that is, runs from one railroad to another, constituted inter-railroad runs and not inter-division runs, that is, runs from one division of the road to another of its divisions, and the work was allotted and divided between the M. & O. men and the North Western men of the Sioux City Division who were assignable to the work proportionately.

Although the evidence is to the effect that the brakemen and conductors of the Nebraska Division of the North Western have worked on the tracks of the M. & O. railroad between Omaha and Blair prior to and since 1930, we find no evidence to support appellants' contention that the North Western had accorded them seniority rights in respect to that work on the M. & O. railroad tracks. Such rights are plainly not accorded by the terms of the agreement ("A" and "B") which specifically confine seniority rights to the division of the railroad on which the seniority rights are held. But plaintiffs have continued to work on the M. & O. tracks as they did before the 1930 plan and it clearly appears that they have not suffered any loss of their work on account of the establishment of the new service. They have merely not been "cut in on", or assigned to the new work in the settlement of the labor problem of the two railroads in respect to the work.

It is true that in cases where men are assigned to runs which extend from one division of the railroad into another division of the same railroad, the agreement makes provision for adjustment in the event of the assignment of the men on one division or the other to such runs, but the finding of the trial court that "prior to the inauguration of these runs [in 1930] the Nebraska Division men of the Chicago and North Western Railway never operated any trains on the Sioux City Division of that railroad, and likewise, the Sioux City Division men of that railroad never operated any trains on the Nebraska Division of that railroad", is in accord with the evidence (except as will be noted in our discussion concerning the 7½ miles of track between Blair and California Junction and the 5.9 miles between that point and Missouri Valley).

Although the history of the agreement, the course of work, the railroad ownership and operations which led up to the establishment of the plan of handling the Omaha-Sioux City traffic in 1930 as shown in the record, and the proceedings within the unions attendant thereon have all been carefully considered, we think that all that is material to the controversy here is reflected in the findings of the trial court, and that its findings that the agreement "limits the seniority rights to the division on which the employee is employed" and that the trackage of the M. & O. used since 1930 for transportation of traffic of both roads between Omaha and Sioux City "is not a part of the Nebraska Division of the Chicago and North Western Railway Company but is a part of the Chicago, St. Paul, Minneapolis & Omaha Railway Company, which is a separate corporation", are sustained by the evidence and are not clearly erroneous.

Through the diligence of counsel our attention has been directed to all of the many cases involving the right of railroad employees to maintain action in the courts as individuals or through unions or as members of a class claiming rights under the collective bargain agreements negotiated as contemplated by the Railway Labor Act, 45 U.S.C.A. § 151 et seq. and they have been considered. But in this case the trial court fully recognized the plaintiffs' right to sue the railroad upon the collective bargain agreement ("A" and "B") and declared as the law that when a collective bargain has been duly established the carrier is not at liberty, so long as the bargain exists, to violate it. Its finding that the tracks of the M. & O. between Omaha and Blair were not a part of the Nebraska Division of the North Western, from which it followed that seniority rights thereon were not covered by the agreement ("A" and "B"), was made upon its own consideration of the evidence. The agreement by its terms did not accord to the plaintiffs the right to perform the Omaha-Sioux City inter-railroad service which was established by the two railroads in 1930, but the court recognized that plaintiffs might have acquired such right under the process of collective bargaining. That process was, as the court found and the appellants concede, duly carried out as contemplated by the Railway Labor Act and resulted in the work not being allotted to the class to which plaintiffs belong. It

was divided in determined proportion between the workmen of the two railroads in the proportions in which they were found to be entitled to it. The record contains expressions by a spokesman for the North Western Sioux City Division indicating bitter dissatisfaction of employees of that division over the amount of work ultimately allotted that division, but they had their hearing and the work has gone on as determined by the process. It is but the dictate of common sense that where as the result of such process labor relations have been established and maintained over a long period of time, as in this case, the powers of the court should not be lightly used to unsettle and disturb them.

As to plaintiffs' contention that the court erroneously gave weight to the determinations of the constituted collective bargaining agencies:

It clearly appears on the face of the court's findings and conclusions that the court carefully discriminated between the issues which it decided upon its own appraisal of the evidence and issues which it declared to be "peculiarly within the province of collective bargaining." It decided on its own consideration of the agreement ("A" and "B") and the relevant evidence that the asserted seniority rights were limited to a division of the railroad so that they did not extend to inter-railroad services, and that the M. & O. trackage was no part of any North Western Division; and as to the particular new Omaha-Sioux City service of 1930 shown by the evidence, it did not find in the agreement ("A" and "B") as a whole or in any of its provisions, an obligation of the North Western to assign the workmen of plaintiffs' class to the new runs. The agreement contemplates that new conditions will be created by changes in operations and provides for collective bargaining to settle the consequent work problems and labor disputes. The court did not assume to determine that under the agreement and the circumstances the plaintiffs were barred from obtaining a share of the newly established runs. But it refused, and declared that it would have no authority to make a new contract for the parties awarding them such a share. It recognized that under the changed conditions resulting from the new plan of operation adopted by the two railroads in 1930, the division of the labor became "peculiarly within the province of collective bargaining", and it based its decision as to rights in respect to the inter-railroad "runs involved in the case" on the determinations made through such collective bargaining.

We think that the court's procedure and ruling were in accord with well settled law. Its conclusion was plainly compelled by the decision of this court in Division 525, Order of Railway Conductors of America v. Gorman, 8 Cir., 133 F. 2d 273, where the court recognized that such an agreement as was shown in this case was, under the stated circumstances, subject even to rescission and change through the collective bargaining process. But it was also consistent with other decisions cited and relied on by appellants to the effect that certain basic rights accorded by a contract of employment of an individual made in relation to such an agreement as is shown here, may not be rescinded through the representative bargaining process.[3] Here the rights claimed and sued for were not directly accorded by the agreement ("A" and "B"). A study of the proceedings and action of the two railroads in allotment of the work in controversy has convinced that the trial court's conclusion that plaintiffs have no standing to demand participation in the runs maintained since 1930 is not erroneous and should be affirmed.

On this appeal the contention has been urged that even if the trial court was right in its decision as to the 24 mile part of the 1930 Omaha-Sioux City runs which are over the M. & O. trackage, that the plaintiffs had a cause of action in respect to the 7½ miles of trackage over which the new runs pass between Blair and California Junction. That comparatively short stretch of trackage crossing the river is within the area of the Nebraska Division of the North Western and there was evidence as to the manner of its use before and after the inter-railroad agreement of 1930. The finding of the trial court that North Western Nebraska Division men did not run into the North Western Sioux City

3 Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226; Rentschler v. Mo. Pac. R. Co., 126 Neb. 493, 253 N.W. 694; Piercy v. Louisville & N. R. Co., 198 Ky. 477, 248 S.W. 1042, 33 A.L.R. 322; Elgin, J. & E. R. Co. v. Burley, 65 S.Ct. 1282, and cases cited.

Division area, and Sioux City Division men did not run into Nebraska Division area, is subject to the qualification that there were some such inter-division runs on the short distance of 5.9 miles between California Junction and Missouri Valley in the Sioux City Division. Plaintiffs made no request of the District Court for separate findings or conclusions in respect to the alternative contentions now urged in respect to the 7½ mile stretch, but stipulated as to the inter-division runs made by the Nebraska Division men over that stretch and over the next 5.9 miles into Missouri Valley "that said trains are not the trains involved in the controversy herein between Omaha and Sioux City."

The record shows that in the collective bargain proceedings which culminated after many hearings in the allotment of the work in controversy which has been maintained for many years, the part of the inter-division runs between California Junction and Missouri Valley manned by Nebraska Division men were taken into account and considered on the question of participation in the new Omaha-Sioux City runs on account of the inclusion of the 7½ mile stretch in such runs. The 5.9 miles practically offsets the 7½ miles. But whether the ultimate allotment of the work to be done was or was not exactly as it would have been made by the court on consideration of the same evidence is beside the point. This court stated in Division 525, etc., v. Gorman, supra [133 F.2d 278], "it is not within the province of the court to determine the regularity of the procedure which prompted the representatives of the Order to enter into the agreements involved", and the principle is peculiarly applicable and controlling on the point here present as to the 7½ mile stretch in the inter-railroad Omaha-Sioux City runs established in and maintained since 1930.

■ Whether or not the inclusion of the 7½ mile stretch of the Nebraska Division in the new inter-railroad runs necessitated inter-division adjustments between the workmen of the two North Western Divisions could not be settled upon consideration of the agreement ("A" and "B") as such inter-railroad runs are not referred to or covered by any provisions thereof.

■ The inter-railroad character of the runs as a whole being apparent, it was peculiarly a matter for the bargaining process to determine whether or to what extent its minor inter-division relations involved as to the 7½ mile stretch should be deemed pertinent or relevant to the allotment of the work on the runs. The railroads had to perform the service and had to negotiate for the performance of the work. That was done, and the representatives of all interests were heard and their respective claims settled upon expert understanding before the runs were undertaken. The settlement was as to work to be done in the future. The situation is different from that in which railroad operations are entered upon and carried on without collective bargaining as to allotment of the work, and where rights become vested before the bargaining process is consummated. Elgin J. & E. Ry. Co. v. Burley, supra.

■ We find no error in the trial court's refusal to upset the long settled collective bargain for the work in question, now peacefully maintained for fifteen years, or its dismissal of plaintiffs' case.

■ On this appeal the railroad has filed an additional transcript of 111 printed pages, which includes the Constitution, Statutes and Rules of Order of the Order of Railway Conductors and of the Brotherhood of Railroad Trainmen, and it is moved that the cost thereof be taxed. The same matter was made available to the trial court and it has been used in the appeal. A great part of the burden of producing competent evidence of the relevant facts in the case, and of reducing the volume of the record for appeal, was borne by the railroad, and although the additional transcript might have been somewhat condensed and parts omitted, we do not hold that it was unnecessary. The costs of the appeal are taxed to appellants except as to one-half the cost of additional transcript charged to appellee.

Affirmed.