**FRANCIS OIL & GAS, INC.,**
Appellant-Plaintiff,

v.

**EXXON CORPORATION,**
Appellee-Defendant.

No. 79–2259.

United States Court of Appeals,
Tenth Circuit.

Submitted July 17, 1981.
Decided Oct. 20, 1981.

Frederic Dorwart, J. Michael Medina, Tulsa, Okl., for appellant-plaintiff.

Varley H. Taylor, G. Michael Lewis, Richard P. Hix, Dorner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., for appellee-defendant.

Before DOYLE and LOGAN, Circuit Judges, and TEMPLAR,* Senior District Court Judge.

WILLIAM E. DOYLE, Circuit Judge.

Francis Oil and Gas, Inc., appellant herein and plaintiff in the trial court, has appealed an unfavorable judgment in this diversity action which was dismissed on a motion for judgment on the pleadings for failure to join indispensable parties as required by Fed.R.Civ.P. 19(b). The indispensable parties were citizens of Oklahoma just as the plaintiff is and it is argued that at least one of these, Phillips Petroleum Co., would be aligned as a defendant so as to destroy the diversity of the plaintiffs and defendant. Francis seeks money damages on its own behalf only based on alleged failure of Exxon, the purchaser of all of the oil here considered, to pay him in accordance with the actual grade of oil which it purchased as certified by Francis based on the particular quantity of the stripper oil. Francis claims it has more stripper well oil than the amounts which Exxon credited to it.

* Honorable George Templar, Senior District Court Judge, Topeka, Kansas, sitting by designation.

The record reveals this to be more than that which appears on the surface, namely a simple question of money damages asserted by Francis. Essentially this is a Rule 19 problem involving the issue whether other parties who are part of the oil and gas unit in the Yates Oil Field in Pecos and Crockett, Texas, other than Francis Oil, particularly those who are a resident of Oklahoma, are indispensable parties.

The alleged insufficiency in payment allegedly originated in 1974 after Marathon Oil succeeded in forming an oil and gas unit in the Yates Oil Field. Within this field Francis owned a four-well-forty-barrel-per-day lease which occupied 80 acres more or less. Francis' participation in the unit that was eventually formed according to the Unit Agreement is relatively small. It is .12946%. There are other interests in the unit, including several Oklahoma residents, including Phillips, who pose the 19(a) and 19(b) question. The Unit Agreement specifies participation based on the producer's tract size relative to the size of the whole unit. The participation determines the share of costs as well as production. Marathon's participation is the largest. It is 49%. Chevron's is about 15.5%; Gulf's is about 10.5%; Amoco's is about 6.5%; Shell's is about 4%; Getty's is about 4%; Exxon's is about 3%; and so on through many other smaller interests. There are alleged to be 194 separate interests in the unit.

In negotiating the Unit Agreements Marathon limited itself to the larger working interests of the field and after obtaining the consent of these working interests offered the final draft to the small interests, including Francis, on a take it or leave it basis. Needless to say, Francis, although wishing to leave it, opted to take it. The position Francis, through its owner, Mr. Kaiser, takes is at odds with the Unit Agreement.

The formula within the Agreement for allocation of production and payment from the Unit among the working interest partic-

ipants is especially prejudicial to Francis Oil Company. The oil pricing regulations issued by the Department of Energy have set prices for upper tier oil and lower tier oil but there is no price regulation for stripper well oil. 10 C.F.R. § 212.1, *et seq.* Stripper well oil is that which is produced from property with wells which pump ten barrels or less per day. 10 C.F.R. § 212.54(c). Apparently Francis has a substantially greater proportion of stripper well oil production for the size of its tract than any of the other tracts in the unit. The unregulated price of stripper well oil is substantially higher than the regulated price of upper and lower tier oil. Despite the prejudice to Francis in having production from the unit allocated according to tract size, Francis nevertheless signed the Unit Agreement under strong and explicit protest but with full awareness of the consequences of the terms.

Exxon purchases all the oil from the producers in the unit under separate individual agreements with the various working interests. Under the Department of Energy regulations each producer certifies its production as being made up of certain amounts of upper tier, lower tier and stripper well oil. 10 C.F.R. § 212.131. The result is that even though the stripper well oil is unregulated, this Unit Agreement in effect subjects it to regulation by means of the purchase formula. The factor which imposes the facially inequitable price payable to plaintiff for its stripper oil is the formula promulgated by the Unit Agreement which specifies participation based on the producer's tract size relative to the size of the whole unit rather than the grades of oil and its value. As a result of this, so it is contended by Francis, the value derived from unregulated stripper oil is lost from Francis and is made available to other members of the unit.

Marathon, the unit operator, had been providing Exxon with a monthly accounting statement showing the participation of all the working interests in the unit based on the tract size according to the terms of the Agreement. The Unit Agreement tract formula covers division of oil produced from the unit among the working interests. Marathon's information was used by Exxon to allocate to upper tier, lower tier and stripper well oil portions of the entire production of each individual producer. The tract area formula was used not only to allocate the whole crude production to each producer, but also to divide the production into the three different priced oils. The net result for Francis was that the amount of stripper well oil allocated to it as a result of using Marathon's statement and the tract formula came out considerably smaller than the actual amount of stripper oil certified by Francis to Exxon.

Francis certified the portion of the stripper oil according to what it had historically produced prior to unitization; it allocated amounts over that to upper and lower tier in the same proportions as was done by the unit. Exxon noticed the discrepancy but at the same time ignored it. Exxon paid Francis in accordance with the formula designed by Marathon. Exxon apparently chose this formula because it was aware that upon unitization, the unit operator, according to DOE regulations, had established a base production control level for the unit which included allocation by proportion to the three types of oil. 10 C.F.R., § 212.72. The resulting money difference demanded by Francis from Exxon amounts to $13,434.10.

Exxon attempted to get a DOE opinion as to which formula should be followed to determine the certified amounts of each of the kinds of oil. DOE however dismissed the request for ruling saying that the question had to do with an internal unit problem.

*Motion of Exxon for Judgment on the Pleadings—Recommended Ruling by Magistrate Rizley*

The motion for judgment on the pleadings was grounded on failure to join all the working interests in the unit, the contention being that these were indispensable parties. This motion was referred to Magistrate Robert Rizley who recommended

that Exxon's motion be denied. The Magistrate pointed out first of all that the burden of proof was on Exxon and that Exxon had not met it. The Magistrate said:

> The determination whether a person is an indispensable party is one which must be made on a case-by-case basis and is dependent upon the facts and circumstances of each case. *Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816 (8th Cir. 1977); 7 Wright & Miller, Federal Practice and Procedure, § 1607; 3A Moore's Federal Practice, ¶ 19.07–2[0].

In considering whether the missing working interest owners should be joined if feasible under Rule 19(a), the Magistrate said:

> "Exxon has the burden of proof to establish whether that:
>
> "(a) in their absence, complete relief could not be accorded Exxon and Francis; or
>
> "(b) the missing working interest owners claim interests relating to the subject matter of the action and are so situated that the disposition of the action in their absence may, * * *
>
> "(1) as a practical matter impede their ability to protect those interests, *or*
>
> "(2) leave any of the persons already parties subject to a substantial risk of incurring inconsistent obligations.
>
> "Exxon has failed to establish any of the alternative prerequisites of Rule 19."

The Magistrate continued:

> "1. Complete relief may be accorded the parties to this action. Francis is seeking a money judgment in the sum of $13,434.10, plus interest and attorney's fees. A decision for Francis for that amount accords Francis all the relief it requested. A decision for Exxon on the merits defeats Francis' claim. Complete relief is accorded in either event. See, *e. g., Bloch v. Sun Oil Corp.*, 335 F.Supp. 190, 196 (W.D.Okl.1971), and *Ramsey v. Bomin Testing, Inc.*, 68 F.R.D. 335, 338 (W.D.Okl.1975).

> "2. Exxon has failed to show that a decision on the merits would leave it subject to a substantial risk of inconsistent obligations. Exxon has simply argued that a decision on the merits could conceivably leave Exxon subject to a risk of inconsistent obligations. Exxon has not met its burden. *Helzberg's Diamond Shops Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816 (8th Cir. 1977).

> "Exxon has not named a working interest owner from which it (Exxon) purchases oil that takes a position contrary to Francis. Even if Exxon were able to establish that Exxon has purchased oil from other working interest owners taking a contrary position, Exxon would then have to show that these working interest owners are non-diverse parties. Furthermore, Exxon would have to establish that any such working interest owner issued a conflicting certification to Exxon. Exxon has not sustained this burden.

> "Even if Exxon were subject to inconsistent obligations the risk of such obligations would be de minimis, and would not arise because of these court proceedings, but because of the course of conduct Exxon has chosen to follow."

> \* \* \* \* \* \*

> "When the moving party is seeking dismissal in order to protect itself against a later suit by the absent person, and is not seeking to protect the absent person against a prejudicial judgment, the undue delay in making the motion is properly considered against him as a reason for denying the motion." [1]

> \* \* \* \* \* \*

> "Exxon's motion for a judgment on the pleadings centers around possible prejudice to Exxon resulting from a determination by this court. Therefore Exxon's lack of diligence in filing the motion is a proper factor to consider."

The Magistrate then concluded that the absent working interest owners' ability to protect their interests will not, as a practical

---

**1.** It will be recalled that Exxon delayed in filing a motion based on Rule 19 for a year.

matter, be impaired or impeded by a decision on the merits. The Unit Agreement was not directly involved in this action and its only relevance was to disclose the proportion of working interests. Also considered was the fact that separate contracts govern the participation of the working interests. The case of *Bloch v. Sun Oil Corp*, 335 F.Supp. 190, 196 (W.D.Okl.1971) was held to be distinguishable. The Magistrate also emphasized the fact that the action was for money damages only and that this is an important consideration in deciding indispensability.

Following objection by Exxon to the magistrate's recommendation the district court disagreed with the magistrate and dismissed the case. It held that the action required an interpretation of the Unit Agreement which would necessarily affect the rights of the 194 other working interest owners in a finite amount of oil. By affidavit the district court received evidence that some of the working interest owners were from Oklahoma thereby destroying diversity.[2]

[1] Francis argues that the trial court improperly applied Fed.R.Civ.P. 19. That rule requires subpart (a) to be applied first to determine whether the absent parties are parties to be joined if feasible. *Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977). The district court found that Fed.R.Civ.P. 19(a)(2)(i) applied because the plaintiff's theory of the case involved the interests of the other working interests due to the finite nature of production from the unit under "the base production control level," and any reallocation of that finite oil to Francis would impede the absent parties' ability to protect their interests.

The trial court also found that Rule 19(a)(2)(ii) was applicable. That part of Rule 19 directs the court to examine the question of subjecting the parties to the risk of incurring multiple or inconsistent obligations. The trial court found that of the non-diverse parties represented by Exxon, there were parties who were benefited by the Unit Agreement formula.

It found also that there being no res judicata effect upon these absent parties, nothing prevented them from litigating the issue in hopes of a judgment which would uphold the alternative formula. Following this both might subject Exxon to an enforcement action by the Federal Energy Regulatory Commission for being involved in the sale of more stripper well oil than the unit or the producers are authorized to sell. There need only be substantial risk and not certainty that the considered events of Rule 19(a) come to pass. *Window Glass Cutters League of America, AFL/CIO v. American St. Gobain Corp.*, 428 F.2d 353 (3rd Cir. 1970).

\* \* \*

There are a number of unanswered questions here. As mentioned above, the first inquiry is whether Rule 19(a) is applicable.

If the disposition of the action in the absence of non-joined parties may impair or impede their ability to protect that interest or leave any of the persons already parties subject to the risk of incurring double, multiple or otherwise inconsistent obligations, they should be joined *if* it is feasible to join them. But we are not certain, from the record that is properly before us under this motion for judgment on the pleadings, if that is the case.

We do know for certain that in the parties' absence complete relief can be accorded among those who are already parties. But we cannot be certain without further hearing whether the absent parties claim an interest relating to the subject of the action and are so situated that the disposition in their absence may, as a practical matter, impair or impede their ability to protect that interest. We know that the interests involved are extremely small. Whether actual prejudice will result is another open question because no effort has been made to ascertain the answer. Plaintiffs' percentage of stripper oil as against the whole is somewhat large. But this is a question of

---

**2.** It mattered not that Exxon was administering a formula which on its face unfairly favored some of the unit interests at the expense of others.

fact which has not been answered and it should be determined before a conclusion can be reached here.

There is need to consider carefully the provisions of subsection (b) of Rule 19. Its importance stems from its laying down the guidelines for indispensable parties. The trial court ruled that the absent parties were indispensable. The test is whether in equity and good conscience the action should proceed. *Wright v. First National Bank of Altus, Oklahoma*, 483 F.2d 73 (10th Cir. 1973). Standards for determining whether a party is indispensable are set forth in subsection (b) of Rule 19 which states:

First, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

After going over the standards, the trial court found that all but the third factor weighed against proceeding with the action and therefore dismissed it.

Before considering applicability of the four factors, it is important to recognize that they are not to be applied in any mechanical way. It is important that they be determined in a practical and pragmatic but equitable manner. *See Schutten v. Shell Oil Co.*, 421 F.2d 869, 874, 21 A.L.R. Fed. 1, 9 (5th Cir. 1970); *see Provident Tradesmens Bank and Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

### The Rule 19(b) Standards

*Standard One*: To what extent is a judgment rendered in a person's absence prejudicial to him or to those already parties.

The trial court acknowledged that under ordinary circumstances a person does not become indispensable in contract actions "simply because that person's rights under an entirely separate contract will be affected." *Helzberg's Diamond Shop, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816 (8th Cir. 1977). The trial court in deciding this discounted existence of the individual purchase contracts. Nevertheless each interested party has such an individual purchase contract whereby he subscribes to the Unit Agreement. In the *Helzberg Diamond Shop* case the court said:

In sum it is generally recognized that a person does not become indispensable to an action to determine rights under a contract simply because that person's rights or obligations under an entirely separate contract will be affected by the result of the action. 3A J. Moore, Federal Practice ¶ 19.10, at 2349–50 (1976); *see also Division 525, Railway Conductors v. Gorman*, 133 F.2d 273 (8th Cir. 1943); 7 C. Wright & A. Miller, Federal Practice & Procedure § 1613, at 135 (1972). This principle applies to an action against the lessor who has entered into other leases which also may be affected by the result in the action in which the other lessees are argued to be indispensable parties. *See, Cherokee Nation v. Hitchcock*, 187 U.S. 294, 23 S.Ct. 115, 47 L.Ed. 183 (1902). We conclude that the district court properly denied the motion to dismiss for failure to join an indispensable party.

*Helzberg, supra*, at 820. The trial court sought to distinguish Helzberg by saying that there is an underlying unit agreement here that affects all of the parties. But to say that the entire class, 194 members, has to be brought in to a controversy in which one person challenges the operators impedes and obstructs the right of the individual contract holder to obtain a hearing and a determination of his rights. It is not apparent that the others will be injured substantially or even slightly. Indeed the outstanding interests that are set forth in the response that was given to the court at its request were extremely small percentages.

The trial court has suggested that Phillips Petroleum Company, one of the parties listed, would probably be on the side of

Exxon and that it would be favored by defendant's formula "and would logically be aligned as a party defendant." This assumes that Phillips would be aligned with Exxon but there is no assurance that this is true. The statement filed by Phillips is extremely guarded, it takes no position whatsoever and doesn't indicate that it wishes to participate. It has had plenty of opportunity to come in if it had wished to do so. The possibility that Phillips would, (a) come in, and (b) would be aligned on the side of Exxon therefore destroying diversity continues to be slight. The trial judge *has* acknowledged that the philosphy of the rule is to avoid dismissal whenever possible.

· There has been no study of the underlying facts here to ascertain how much of an interest the interest holders not brought have in stripped oil and hence are going to be prejudiced as a result of not giving them an opportunity to be heard at the same trial with the plaintiff. The court has merely adopted the position that there would be prejudice in a real and practical sense. However, on this meager record it is valid and logical to argue that the plaintiff is the only person who would be affected and it is very likely that his gain would affect Exxon only and that the impact would in any event be slight. This, however, is not open to guesswork. Final conclusions must await the taking of evidence on the question.

*Standard Two*: The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided.

■ The trial court concluded that there is no way to limit the prejudicial effect of a judgment in the case. We must disagree. The judgment would have no effect whatsoever on the rights of the other parties because each has a contract of his own and they are entitled to litigate it just as the plaintiff is entitled to present his suit. Here again the only way to accurately measure whether there is a fund and

whether there would be a diminution of the fund would be to take some evidence. However, the trial court as a court of equity can tailor its judgment so as to protect persons not before it.

As to the *third Standard,* the court acknowledged that without doubt the judgment would be adequate as between Francis and Exxon. Exxon would either have to pay additional money to Francis or it would not and the presence of other working owners would have no effect on this.

*Standard Four*: Will plaintiff's remedy be adequate if the action is dismissed for nonjoinder?

■ We say no. The court must balance the interest of the plaintiff against those of the defendant and the absentees. Here the trial judge has suggested that the plaintiff go to Pecos and Crockett Counties in Texas and file an action in state court;[3] that this would be the only way to eliminate dangers of subsequent litigation and to eliminate inconsistent judgments or interpretations. The court gives no weight to the plaintiff's right to select his forum and assumes that plaintiff will not suffer. It says that the right of plaintiff must give way under certain circumstances. The difficulty is we do not know what the circumstances are. We do not know what the dollar and cent differences are and we have no idea as to the effect of a judgment in favor of the plaintiff could have on the other parties assuming that this would be treated on the basis of a total fund rather than on the personal liability of the defendant Exxon. This however does not appear to be a stakeholder situation.

\* \* \*

■ It is to be concluded from a view of the inquiries that were pursued under Rule 19(b) that, at least as far as the record has so far been developed, the parties are not proven to be indispensable whereby the cause has to be dismissed. This may prove to be the result after trial, but a trial should be had before a decision is made.

**3.** We do not downgrade the competence of the Texas Court. It is the extreme effort and expense which militates against such a course.

We further conclude that a case of this kind is not to be determined by drawing inferences from the pleadings. There is a need for a meaningful hearing which examines the pertinent facts in the case. Only then will there be a sound basis for balancing the interests and making a decision. But at present the record is grossly inadequate.

A general summary of the applicable law under various circumstances is provided in J. Moore's Federal Practice, 19.09[4]. As in other areas it varies with the facts but pragmatism appears to be the guide. Injurious effect of the judgment seems to be the important test of indispensability. Inability or ability to frame a non-prejudicial judgment is also an important feature. Ability to separate the interests so that a judgment does not directly affect the other interests is also important.

In our view then the cause must be remanded for the purpose of having a trial, or hearing, one which seeks to ascertain some of the factual matters which have not been determined. If, for example, the other interests are so small that the parties have no interest in coming in, they shouldn't be forced to litigate nor should an effort be made to force Phillips to come in in order to destroy diversity. The hearing should be conducted with a view to satisfying Rule 19, not only its positive provisions, but also a hearing which will carry out its philosophy.

### Conclusion

The dearth of facts is the important reason for remanding the case. The motion for judgment on the pleadings is not the appropriate proceeding for determining whether a party is indispensable. To so proceed allows the use of the motion in question as a protective shield. The moving party avoids the assuming of the burden of proof of the essential facts and also avoids the merits. The final result is apt to be unsatisfactory whereby justice is not served.

The judgment of the district court is reversed for further proceedings consistent with the foregoing.

LOGAN, Circuit Judge, concurring:

As I understand the majority opinion, it remands to require the trial court to hold a hearing and accept evidence that will permit it to resolve the Fed.R.Civ.P. 19 questions. The evidence may show that the interest of at least one Oklahoma party to the unitization agreement will be adversely affected by the interpretation Francis Oil & Gas, Inc. seeks. If so, that party would have to be aligned as a defendant, which would destroy diversity and require dismissal of Francis's action. I agree that the record is too incomplete to permit a determination whether any of the Oklahoma residents would oppose Francis's position. Exxon declares that Phillips Petroleum Company has an interest adverse to Francis's. But while Phillips has a working interest in the field and was paid for some stripper oil, the affidavit of the Phillips employee is noncommittal and neither it nor anything else in the record supports a conclusion that Phillips benefits from the formula Marathon uses to allocate payments for stripper oil. Of the other interest owners in the field who are Oklahoma residents, some have joined Francis in a suit in Texas against Exxon and some have not, but the record does not show whether any of those Oklahoma residents who have not joined the Texas suit benefit from Marathon's interpretation of the agreement.

Additionally, as this action has been brought in Oklahoma, the federal court there may lack personal jurisdiction over some of the unit participants. If the evidence shows they cannot be joined and that they oppose the position taken by Francis, then just as with any Oklahoma residents that cannot be joined without destroying subject matter jurisdiction, the trial court must decide "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed."

With this understanding as to the type of hearing that the trial judge should hold, I concur in the judgment. I write separately to state the legal analysis that I think will

require dismissal of this action if, as seems likely, an Oklahoma resident or some party to the agreement not subject to service of process by the court below has an interest that will be adversely affected if Francis prevails. I certainly agree with the majority that Fed.R.Civ.P. 19(a) is the starting point for analysis. The significant problem is raised in subsection (a)(2)(ii): whether the absence of other parties to the unit agreement may leave Exxon Corporation "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." As the trial court recognized, if this suit were to proceed with only Francis and Exxon as parties and if Francis were to win, Exxon would be in violation of Department of Energy (DOE) regulations having the force of law, see 10 C.F.R. §§ 212.72, 212.75, 212.131 (1981), unless Exxon reduced the total of the payments it makes to other interest owners in this unit. If Francis were to win, other interest owners that also delivered *more* stripper oil than given credit for by Marathon's accounting to Exxon would likely bring suit, and the doctrine of collateral estoppel probably would bar Exxon from relitigating the issue. *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). At the same time, interest owners who delivered *less* stripper oil than allotted to them by Marathon's accounting would undoubtedly resist reduction of Exxon's payments to them, and because they were not parties to the action between Francis and Exxon, a prior judicial interpretation of the unit agreement would not bind them.[1] They might successfully contend Exxon's current payment method is proper. If so, Exxon would be paying for more stripper oil than it received from the unit, in violation of DOE regulations. *See* 20 C.F.R. § 212.75 (1981). Caught between the DOE regulations and these possible judicial decisions, Exxon is subject to a substantial risk of inconsistent obligations.

If the evidence shows that other participants in the unit cannot be joined while maintaining subject matter jurisdiction, then the court must look at subsection (b) of the Rule to determine if, in equity and good conscience, the action should proceed in the absence of those other unit interest owners. If Exxon prevails in this action, participants that agree with Francis's view would not be prejudiced by their nonjoinder since they can relitigate the issue. As outlined above, however, if Exxon loses this action, it would face a substantial risk of inconsistent obligations. As to the second factor, I do not believe the court could shape the relief or take other measures to lessen or avoid the prejudice to Exxon. The third factor set out in Rule 19(b), "whether a judgment rendered in the person's absence will be adequate," does not apply. The fourth factor, "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder," is to me the key. Francis could bring its action in a state court in Texas where its oil interest is located and join all the interest holders there. I believe it is not unduly burdensome to require an Oklahoma resident who owns an oil lease on Texas land and enters into a unitization agreement regarding his lease interest to litigate in the state courts where the lease interest exists.

---

1. That each interest holder in the unitized tract may have signed a separate consent to be a part of the unit does not, in my view, make them separate agreements. Francis signed a contract entitled "Working Interest Owner Ratification and Agreement to Become a Party to Unit Agreement and Unit Operating Agreement, Yates Field Unit, Pecos and Crockett Counties, Texas;" this contract clearly made Francis a party to the unit agreement and the unit operating agreement with the same status as every other interest holder.